# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-4014

———————

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Lee A. Foley | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: November 18, 1999

Filed: March 3, 2000

———————

Before BEAM, FLOYD R. GIBSON, and WELLFORD,[1] Circuit Judges.

———————

FLOYD R. GIBSON, Circuit Judge.


Lee A. Foley was indicted on one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841 (a)(1) and 18 U.S.C § 2 (1994).  The district

———————————————

[1]The Honorable Harry W. Wellford, Senior Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

court,[2] adopting the report and recommendation of the magistrate judge,[3] denied Foley's motion to suppress evidence seized . Foley entered a conditional plea of guilty, subject to this appeal of the suppression ruling. For reversal, Foley argues that his investigatory detention was not reasonably related, in scope or duration, to the purpose of the initial traffic stop, thereby tainting the fruits of the subsequent search. We affirm.

## I.

On February 22, 1997, Nebraska State Highway Patrol Trooper Frank Peck observed a maroon Dodge Intrepid that he believed to be exceeding the 65 mile-per-hour posted speed limit. Utilizing his mobile radar, Trooper Peck clocked the vehicle at 74 miles per hour. After Trooper Peck engaged his lights and siren, the vehicle stopped.

In response to Trooper Peck's request, the driver, Stephanie Wilson, produced her driver's license and the passenger, Lee A. Foley, provided the car rental agreement and additional driver application and agreement. Trooper Peck explained that he had stopped Wilson for speeding and changing lanes without signaling, both in violation of Nebraska law. During this exchange, Trooper Peck observed an air freshener hanging from the rear view mirror. Based on his experience, Trooper Peck found the presence of the air freshener suspicious in a rented vehicle.[4] Trooper Peck then asked Wilson to accompany him to his patrol unit while he completed a computer check of her driver's license.

---

[2]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[3]The Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

[4]Trooper Peck testified that air fresheners are used frequently to mask the odor of drugs.

While checking her license, Trooper Peck engaged Wilson in general conversation regarding her departure location and ultimate destination. Wilson stated that she and Foley had been visiting Foley's son in California and were returning to their home in Indianapolis. Wilson stated additionally that Foley had rented the vehicle.

After examining the car rental agreement, Trooper Peck determined, however, that the vehicle was rented in the name of Ruby Davis. Foley was listed as the additional driver. Trooper Peck then returned to the rented vehicle and requested Foley's identification. During this contact, in an attempt to verify Wilson's statements, Trooper Peck asked Foley if he was coming from a funeral. Foley initially responded affirmatively, but later recanted, stating that he and Wilson had been visiting his grandson in California. After additional questioning, Foley stated that he and Wilson had flown to California and that his daughter-in-law had rented the vehicle. Foley was, however, unable to provide the name of his daughter-in-law. Trooper Peck noted that Foley seemed nervous and avoided eye contact.

Trooper Peck returned to his patrol unit to complete a computer inquiry on Foley's license. While doing so, he further questioned Wilson. When asked how she and Foley had traveled to California, Wilson responded that they had driven. Trooper Peck inquired as to the make of vehicle they had driven to California. Trooper Peck testified that after a significant pause, Wilson looked at the "Bronco" insignia on the dashboard of his patrol unit, and stated that she and Foley had driven a Bronco to California.

His suspicions now aroused thoroughly, Trooper Peck radioed for assistance. Approximately eight minutes later, a backup unit arrived. Trooper Peck informed Foley that, due to the discrepancies between his and Wilson's stories, he intended to conduct an exterior canine sniff of the vehicle. In response to Trooper Peck's inquiry regarding the presence of guns or drugs in the vehicle, Foley responded initially in the negative, but later stated that some marijuana might be located in the back seat.

Trooper Peck conducted the exterior sniff, to which his canine, Lex, alerted. Trooper Peck then placed Lex inside the vehicle, where he again alerted. Trooper Peck searched the back seat, including the contents of a purse, and discovered a small quantity of marijuana. Trooper Peck proceeded to the rear of the vehicle, placing Lex in the trunk. Lex alerted to a heavy black bag, which was discovered to contain a large quantity of cocaine. Thereafter, Foley was placed under arrest. Approximately thirty minutes elapsed during the total pendency of the stop.

## II.

Foley does not contend that the initial stop of his automobile violated the Constitution, nor could he do so here. As we have stated repeatedly " 'a traffic violation–however minor–creates probable cause to stop the driver of a vehicle.' " United States v. Barry, 98 F.3d 373, 376 (8th Cir.1996) (quoting United States v. Barahona, 990 F.2d 412, 416 (8th Cir.1993)). In this case, Trooper Peck's observation of Wilson speeding and changing lanes without signaling provided probable cause to stop the automobile. Thus, there is no dispute that the initial stop of the automobile was lawful.

Rather, Foley argues that the detention was not reasonably related, in scope or duration, to the purpose of the initial traffic stop, thereby constituting an illegal detention. We review district court's findings of historical fact for clear error. The district court's determinations of reasonable suspicion and probable cause are reviewed de novo. See United States v. Dodson, 109 F.3d 486, 488 (8th Cir. 1997); United States v. Carrate, 122 F.3d 666, 668 (8th Cir.1997).

As his first point, Foley posits that Trooper Peck's question regarding his preceding attendance at a funeral was not reasonably related to the circumstances that justified the stop, rendering the subsequent detention and search illegal. We disagree. "Typically, a reasonable investigation of a traffic stop may include asking for the

driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose." United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994)(citing United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993); United States v. Richards, 967 F.2d 1189, 1193 (8th Cir. 1992)). Moreover, an officer may undertake similar questioning of other vehicle occupants to verify information provided by the driver. See United States v. Johnson, 58 F.3d 356, 357 (8th Cir. 1995).

Foley concedes that Trooper Peck was authorized to question him in order to verify Wilson's statements. He objects, however, to the formulation of the question, given that Wilson had made no previous mention of a funeral. Thus, rather than being designed to verify information, as prescribed by Johnson, Foley asserts that Trooper Peck's question was designed to engender confusion and elicit an inconsistent response so as to manufacture reasonable suspicion.

We decline, however, to participate in Foley's perambulation into Trooper Peck's subjective intention in asking such a question. See Whren v. United States, 517 U.S. 806 (1996) (rejecting the proposition that ulterior motivations operate to strip officers of legal justification for their conduct). We confine our inquiry to the objective propriety of the question, as defined by applicable reasonable suspicion jurisprudence. Trooper Peck was entitled to seek and verify information regarding Wilson and Foley's destination and purpose. See Ramos, 42 F.3d at 1163; Johnson, 58 F.3d at 357. Accordingly, Trooper Peck posed a simple, non-incriminating query regarding the purpose of the trip. Thus, we conclude that Trooper Peck's question, albeit creative, was not impermissible.

Further, even if we were inclined to attach impropriety to Trooper Peck's question, we would nonetheless deny suppression in this instance. An officer may properly expand the scope of his investigation as reasonable suspicion dictates. See Ramos, 42 F.3d at 1163. To evaluate reasonable suspicion, "[w]e look to the totality

of the circumstances, in light of the officer's experience." United States v. Carrate, 122 F.3d 666, 668 (8th Cir. 1997)(citation omitted).

In this case, the totality of the circumstances, wholly independent of the funeral question, justified Trooper Peck's suspicion. The record reveals sufficient articulable facts, including the presence of a masking odor, Foley's nervous behavior, Foley's inability to recall the name of his purported daughter-in-law, and the vast divergence between his and Wilson's allegations regarding travel accommodations to California, to sustain reasonable suspicion. Therefore, we conclude that any ostensible illegality was attenuated sufficiently so as to dissipate the resultant harm. See Wong Sun v. United States, 371 U.S. 471, 488 (1962)(noting the distinction between evidence obtained through the "exploitation of . . . [an] illegality" and evidence obtained "by means sufficiently distinguishable to be purged of the primary taint").

Foley submits as his second point that the duration of the traffic detention was constitutionally unreasonable. The detention following a traffic stop must be reasonable and the court must consider the length of the detention and the efforts of the police to conduct their investigation quickly and unintrusively. See United States v. Bloomfield, 40 F.3d 910, 916-17 (1994). We do not find the length of the detention in this case to be unreasonable. Trooper Peck acted diligently to obtain and verify information. This information created additional suspicion justifying the brief delay pending arrival of a backup unit and performance of the subsequent dog sniff. The entire stop lasted under thirty minutes. See United States v. Sharpe, 470 U.S. 675, 686, 688 (1985)(recognizing that longer detentions may validly result from "a graduate[d]. . . respons[e] to the demands of [the] particular situation" and therefore rejecting a "hard-and-fast time limit" for investigatory stops). See also United States v. White, 42 F.3d 457, 460 (8th Cir. 1994)(finding delay of one hour and twenty minutes for arrival of drug dog reasonable); Bloomfield, 40 F.3d 916-17 (finding one hour wait for drug dog reasonable). The district court did not err in concluding that the length of the detention was reasonable.

Foley raises a final claim challenging the district court's determination that he was ineligible for the "safety valve" provision under U.S.S.G § 5C1.2. We have carefully considered this claim and conclude that it lacks merit.  <u>See</u> 8th Cir. R. 47B. Accordingly, we affirm the decision of the district court.


A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.