# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1789

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Daniel Dale Hanlon, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 16, 2004
Filed: January 25, 2005

_____

Before WOLLMAN, HEANEY, and FAGG, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Daniel Dale Hanlon entered a conditional guilty plea to one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). He appeals from the district court's[1] denial of his motion to suppress evidence seized during a pat-down search of his person and a subsequent search of his vehicle. We affirm.

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

## I.

On June 4, 2003, at 3:07 a.m., Officer Adam Halverson of the Lino Lakes, Minnesota, Police Department observed a black Nissan truck leave a gas station and enter northbound Interstate 35W without signaling its turn. Halverson activated the lights on his squad car and checked the registration status of the truck in preparation for stopping the truck. The registration check indicated that the truck was registered in the name of Tina Schroeder of Brooklyn Center, Minnesota.

After stopping the truck, Halverson asked both the driver of the truck and its passenger for identification. Halverson identified the driver as Daniel Dale Hanlon and the passenger as Charmaine Johnson. Halverson then asked Hanlon where he was headed, informed Hanlon that he had been stopped for failing to signal a turn, and—since neither occupant of the truck was its registered owner—asked Hanlon about the truck's ownership. Hanlon stated that he had purchased the truck about two weeks ago "from a guy that lives in Coon Rapids."

During his conversation with Hanlon, Halverson observed that Hanlon was "shaking profusely," appeared to be very nervous, and did not make eye contact with Halverson at any time. Halverson also noticed two packets of rolling papers on the truck's dashboard. When Halverson asked Hanlon about the rolling papers, Hanlon indicated that he rolled his own cigarettes, even though he was holding a package of Camel cigarettes in his hand throughout the conversation. After Halverson asked Hanlon for proof of insurance, Hanlon pulled another packet of rolling papers from his wallet. At this point, Halverson asked Hanlon to step outside of the truck for further questioning because Hanlon's story about the truck's ownership was inconsistent with the truck's registration data. Halverson stated that he also made this request because he felt more comfortable with Hanlon outside of the truck.

Halverson led Hanlon to the front of the squad car, where he questioned him further about the truck's ownership. Halverson then conducted a pat-down search for weapons. Halverson testified that he did so for his own safety and for Hanlon's safety. During the pat-down search, Halverson felt a "hard object" that was one-half to one inch in length and smaller in diameter than a penny in Hanlon's right coin pocket. Halverson testified that he could not rule out the possibility that the object was a weapon and specifically stated that the object could have been a small pocketknife. Hanlon then removed the object from his pocket.[2] The object turned out to be a small glass vial containing a substance that Halverson believed was methamphetamine (later tests confirmed this assessment). Halverson placed Hanlon in the back of the squad car and informed Hanlon that he planned on arresting him for possession of a controlled substance. A subsequent inventory search of the truck by Halverson and Officer Nabil Gubash—a second Lino Lakes police officer who arrived at the scene at about the time that Halverson asked Hanlon to step out of the truck—uncovered additional methamphetamine and drug paraphernalia.

Hanlon moved to suppress the evidence seized in the pat-down search and the later search of the vehicle, contending that the pat-down search and the seizure of the vial were unconstitutional. Hanlon also contended that the additional methamphetamine and drug paraphernalia found in the truck should be suppressed as fruits of an illegal search. See Wong Sun v. United States, 371 U.S. 471, 484-86 (1963). The magistrate judge[3] disagreed and found that both the pat-down search and the seizure of the vial were permissible under Terry v. Ohio, 392 U.S. 1 (1968). The

---

[2]There is conflicting testimony as to whether Halverson ordered Hanlon to remove the object or whether Hanlon removed it of his own accord. Because we hold that Halverson's removal of the object from Hanlon's pocket was constitutionally valid, we need not determine whether Hanlon consented to the removal.

[3]The Honorable Susan Richard Nelson, United States Magistrate Judge for the District of Minnesota.

district court adopted the magistrate judge's report and recommendation and denied the motion to suppress.

## II.

When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its ultimate finding of reasonable suspicion *de novo*. United States v. Dodson, 109 F.3d 486, 488 (8th Cir. 1997) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

## A.

Hanlon does not dispute that Halverson had probable cause to stop the truck. See United States v. Cummins, 920 F.2d 498, 500 (8th Cir. 1990) (traffic violations—however minor—constitute sufficient probable cause to stop a vehicle). Instead, he argues that Halverson impermissibly expanded the scope of the stop beyond the original traffic violation.

"Typically, a reasonable investigation of a traffic stop may include asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose." United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000) (quoting United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994)). If the driver's answers to the officer's inquiries and other surrounding objective circumstances give rise to a reasonable suspicion that "criminal activity may be afoot," Terry, 392 U.S. at 30, the officer may expand the scope of his investigation. Foley, 206 F.3d at 806; Ramos, 42 F.3d at 1163. When evaluating whether such reasonable suspicion exists, "we look to the totality of the circumstances, in light of the officer's experience." Foley, 206 F.3d at 806 (quoting United States v. Carrate, 122 F.3d 666, 668 (8th Cir. 1997)). Our focus on the totality of the circumstances in each particular case means that even a series of acts innocent in themselves may give rise to a reasonable suspicion of criminal activity when taken

together.  See United States v. Arvizu, 534 U.S. 266, 274 (2002) (citing Terry, 392 U.S. at 22).

Here, the totality of the circumstances justifies Halverson's expansion of his investigation.  Although Halverson had no indication that the truck was stolen, Hanlon's claim that he obtained the truck two weeks earlier "from a guy in Coon Rapids" was inconsistent with the truck's registration status.  When combined with Hanlon's extreme nervousness, profuse shaking, and refusal to look Halverson in the eye, this inconsistency was sufficient to create a reasonable suspicion that the truck might be stolen.  See United States v. Rowland, 341 F.3d 774, 784 (8th Cir. 2003) (officer may infer that vehicle might be stolen from occupants' inability to prove ownership of the vehicle).  In addition, although Hanlon's representation that he rolled his own cigarettes may have been true, this representation was inconsistent with the fact that he was holding a pack of Camels in his left hand during his conversation with Halverson.  Thus, the presence of rolling papers—known drug paraphernalia—in addition to the other surrounding circumstances provided additional justification for the expansion of Halverson's investigation.

**B.**

Hanlon next claims that, even if Halverson was justified in expanding the scope of his investigation, he was not justified in subjecting Hanlon to a pat-down search for weapons and, in addition, exceeded the scope of any allowable search by seizing the vial of methamphetamine from Hanlon's pocket.

An officer is justified in making "a limited, warrantless search for the protection of himself or others nearby in order to discover weapons if he has a reasonable, articulable suspicion that the person [being detained] may be armed and presently dangerous." United States v. Roggeman, 279 F.3d 573, 577 (8th Cir. 2002) (citing Terry, 392 U.S. at 30).  The sole justification for such a search is "the protection of the officer and others." Id.  Although the officer need not actually fear

that the individual is armed and dangerous, the facts must be such that "a hypothetical officer in exactly the same circumstances" reasonably could believe that the individual is armed and dangerous. Id. at 580 n.5. We again look to the totality of the circumstances present at the time of the confrontation in order to determine whether reasonable suspicion exists. Id. at 578 (citation omitted).

The same circumstances that created a reasonable suspicion of criminal activity and allowed Halverson to expand the scope of his investigation gave rise to a reasonable suspicion that Hanlon might be armed and dangerous. We have previously stated that, when officers encounter suspected car thieves, they also may reasonably suspect that such individuals "might possess weapons." See Rowland, 341 F.3d at 784; United States v. Shranklen, 315 F.3d 959, 963 (8th Cir. 2003). Accordingly, because Halverson already had a reasonable suspicion that Hanlon might have stolen the truck, he also was justified in suspecting that Hanlon might possess weapons. In addition, Hanlon's extreme nervousness and failure to make eye contact with Halverson bolstered Halverson's reasonable suspicion that Hanlon was armed and dangerous. See United States v. Robinson, 119 F.3d 663, 667 (8th Cir. 1997) (nervous appearance and failure to make eye contact with officer support officer's reasonable suspicion that individual is armed and dangerous).

Furthermore, Halverson's seizure of the vial of methamphetamine from Hanlon's pocket did not exceed the allowable scope of the pat-down search. Because safety is the sole justification for a pat-down search for weapons, only searches "reasonably designed to discover concealed weapons" are permissible. Roggeman, 279 F.3d at 577. An officer may, however, seize nonthreatening contraband detected during a pat-down search for weapons as long as the search itself "stays within the bounds marked by Terry." Minnesota v. Dickerson, 508 U.S. 366, 373 (1993). Thus, if an officer seizes an item of contraband from an individual's person after having concluded that no weapons are present, the evidence will be suppressed. Id. at 378.

During his pat-down search of Hanlon, Halverson never concluded that weapons were not present.  Instead, he testified that he was specifically concerned that the admittedly small object in Hanlon's coin pocket could have been a pocketknife or some other type of weapon.  The district court's decision to credit his testimony is "virtually unreviewable on appeal," United States v. Marks, 328 F.3d 1015, 1018 (8th Cir. 2003) (citation omitted), and we find no basis in the record on which to disagree with the district court.  Accordingly, the search "stayed within the bounds of Terry," and the seizure of the vial of methamphetamine was valid.  See Dickerson, 508 U.S. at 373.

The judgment is affirmed.

_____