# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3654

_____

United States of America,

          Appellee,

v.

Daniel Patrick Hogan,

          Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court of the Western
\*  District of Missouri.
\*
\*
\*

_____

Submitted: June 10, 2008
Filed: August 27, 2008

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Daniel Patrick Hogan of conspiracy to distribute meth, possession with intent to distribute meth, and distribution of meth, all in violation of 21 U.S.C. § 841(a)(1). Hogan appeals, asserting that the district court[1] erred in denying his motions to suppress and for acquittal, and in sentencing him to 188 months' imprisonment. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

## I.

On May 2, 2004, an Oklahoma trooper stopped a vehicle after the driver (Hogan) committed a lane change violation. As the trooper approached the vehicle, Hogan moved around, bending repeatedly. Patting down Hogan, the trooper noticed that he was unusually warm, shaky, sweaty, and fidgety. Hogan told the trooper that he planned to be in Branson, Missouri, within an hour, which was impossible.

The trooper suspected that Hogan was under the influence of meth, and summoned his partner, who had a drug detection dog. The dog alerted to two areas of the vehicle. The trooper and his partner asked Hogan if there were drugs in the vehicle; Hogan replied there was marijuana. The troopers searched the vehicle and found about 314.3 grams of meth and a smaller quantity of marijuana. The partner then attempted to convince Hogan to make a controlled delivery of the meth. Hogan refused. The troopers arrested Hogan, and read the *Miranda* warnings.

In September 2004, federal agents intercepted a UPS package containing about 130.8 grams of meth. A controlled delivery of the package was made to its intended recipient, who then delivered the meth to Phil Myers. The agents arrested Myers, who said he had, at Hogan's instruction, received the package and wired money to California. Myers confirmed his involvement with Hogan by playing several voice mail messages from Hogan.

On October 17, 2004, Officer Robert Curtis arranged for Myers to make a controlled buy of meth from Hogan at his trailer. Myers wore a recording device; officers listened to the entire transaction. The conversation between Myers and Hogan indicated additional meth in the home. Myers purchased about 10.5 grams of meth.

Shortly after Myers left, Officer Curtis and another officer approached the trailer, wearing police vests, to conduct a "knock and talk." A man on the porch made eye contact with Officer Curtis, and then turned and ran inside. Concerned about their

safety and possible destruction of evidence, the officers chased him into the trailer and detained the people inside, which included Hogan. The officers conducted a protective sweep of the premises, which did not reveal weapons. Officer Curtis informed Hogan of his *Miranda* rights. Hogan signed a consent form to search the trailer, and a *Miranda* waiver. In the subsequent search, officers found meth (about 80.3 grams) and a digital scale. Hogan told officers that he had sent the UPS package, fronted drugs to some of his customers, and since May 2004, traveled to California at least 15 times to retrieve drugs (about 2.5 pounds of meth).

On October 19, 2004, officers interviewed Hogan, after again advising him of his rights. Hogan admitted transporting meth from California since 2003. He also produced a chart detailing the pattern of distribution. It showed his source, and listed him as the source for other dealers.

Hogan moved to suppress the evidence obtained during the May 2 traffic stop and October 17 trailer search. After an evidentiary hearing, a magistrate judge denied both motions, and the district court adopted its report and recommendation.

While Hogan was in pretrial custody, the jail placed him in monitored segregation because of threats to the jail captain. Under jail policy, Hogan's personal items were collected from his cell. In addition to jail personnel, Officer Curtis was allowed to review Hogan's documents for further threats. Officer Curtis discovered statements about drug dealings. Hogan unsuccessfully moved to suppress this evidence.

At trial, the government introduced testimony by the officers involved in the stop and Officer Curtis, testimony by two of Hogan's co-conspirators (including Myers), a recording of the controlled buy, the papers seized from Hogan while in jail, a video tape of one of Hogan's road trips to California, and various physical evidence. At the close of the government's case, Hogan moved for a judgment of acquittal,

which was denied. The jury found him guilty, and the district court sentenced him to 188 months' imprisonment. Hogan appeals.

## II.

Hogan appeals the denial of his motions to suppress evidence gathered during the traffic stop, and the searches of his trailer and jail cell. This court reviews "the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo." *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006). "This court will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *United States v. Annis*, 446 F.3d 852, 855 (8th Cir. 2006) (internal quotation marks and citation omitted).

## A.

Hogan first contends that the district court erred in denying his motion to suppress the drugs and statements obtained during the traffic stop. He claims the marijuana and meth should have been excluded because the search exceeded the scope of the stop.

Hogan's lane-change violation provided probable cause to initiate the traffic stop. *See United States v. Luna*, 368 F.3d 876, 878 (8th Cir. 2004) ("An officer's observation of a traffic violation, however minor, gives the officer probable cause to stop a vehicle . . . ."). Once the officer stopped Hogan, he had authority to "check the driver's license and registration, ask the driver about his destination and purpose, and request that the driver sit inside the patrol car." *United States v. Brown*, 345 F.3d 574, 578 (8th Cir. 2003). During this permissible investigation, the officer observed nervousness (shaking, sweating, fidgeting, etc.) and heard Hogan's impossible plan to be in Branson within an hour. The officer suspected Hogan was under the influence

of drugs. These observations provided the requisite reasonable suspicion to expand the scope of the stop, and to involve a drug detection dog. *See United States v. Allegree*, 175 F.3d 648, 650 (8th Cir. 1999) ("If an officer's suspicions are aroused in the course of such an investigation, the officer is entitled to expand the scope of the stop to ask questions unrelated to the original traffic offense . . . ."); *see also United States v. Linkous*, 285 F.3d 716, 720 (8th Cir. 2002). When the dog alerted, the officers had probable cause to search the vehicle. *See United States v. Olivera-Mendez*, 484 F.3d 505, 512 (8th Cir. 2007) ("a dog's positive indication alone is enough to establish probable cause for the presence of a controlled substance if the dog is reliable") (internal quotation marks and citation omitted). The district court did not err in denying Hogan's motion to suppress the meth and marijuana.

Hogan also maintains that his pre-*Miranda* statements should have been excluded because they were the result of a custodial interrogation. *See Dickerson v. United States*, 530 U.S. 428, 431-32 (2000) ("*Miranda* . . . held that certain warnings must be given before a suspect's statement made during custodial interrogation could be admitted in evidence."). Two statements are at issue: (1) before the search, the troopers asked Hogan if there were drugs in the vehicle, and Hogan admitted there was marijuana; and (2) after discovering the drugs, the troopers asked Hogan to make a controlled delivery, but he refused. The district court admitted these statements, finding that they were not part of an interrogation, and thus *Miranda* warnings were not required.

*Miranda* defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Interrogation refers not only to express questioning but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Holman v. Kemna*, 212 F.3d 413, 418 (8th Cir. 2000), *citing Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Here, the troopers expressly questioned Hogan about his knowledge of the presence

of drugs, and his willingness to assist in a controlled delivery. These questions were reasonably likely to elicit an incriminating response from Hogan. Because Hogan was in custody, *Miranda* warnings were required. The district court erred in denying the motion to suppress these statements.

The error in admitting the two statements may be harmless. *See **Chavez v. Weber***, 497 F.3d 796, 805 (8th Cir. 2007). "An error is harmless if it does not affect substantial rights of the defendant, and did not influence or had only a slight influence on the verdict." ***United States v. Martinez***, 462 F.3d 903, 910 (8th Cir. 2006) (internal quotation marks and citation omitted). "The admission of statements obtained in violation of *Miranda* may constitute harmless error where there remains overwhelming independent evidence as to the defendant's guilt." ***Chavez***, 497 F.3d at 805, *quoting **United States v. Packer***, 730 F.2d 1151, 1157 (8th Cir. 1984). Here, excluding the two statements, there was overwhelming independent evidence of Hogan's guilt. Over five months after the traffic stop, Hogan sold meth to Myers, was found in possession of meth, and then admitted traveling to California 15 times to purchase meth, transporting meth to Missouri, and fronting meth to other dealers. The traffic stop statements, at best, were marginally incriminating. In the first, Hogan admitted that marijuana was in the vehicle. He was ultimately charged only with meth offenses. *See **id***. In the second, Hogan refused to participate in a controlled delivery. In light of the overwhelming independent evidence of Hogan's guilt, the district court's error in admitting the two statements was harmless beyond a reasonable doubt.

B.

Hogan next argues that the district court erred in denying his motion to suppress the evidence and statements obtained during the warrantless search of the trailer. In accordance with the Fourth Amendment, "a warrantless search of a home must be supported by consent or probable cause and exigent circumstances." ***United States v. Poe***, 462 F.3d 997, 999 (8th Cir. 2006). "The exception justifies immediate police action without obtaining a warrant if lives are threatened, a suspect's escape is

imminent, or evidence is about to be destroyed." *United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996). This court applies "an objective standard to evaluate the reasonableness of an assertion that exigent circumstances justified a warrantless entry." *United States v. Leveringston*, 397 F.3d 1112, 1116 (8th Cir. 2005).

Hogan claims that the district court erred in finding exigent circumstances. Shortly before officers approached the trailer, they listened to a transaction where Hogan sold meth to Myers, implying that he had more meth in the trailer. Then, approaching the trailer to conduct a "knock and talk," the officers observed a man make eye contact, and then turn and flee. In these circumstances, it was reasonable for the officers to be concerned about their safety and the possible destruction of evidence. *See Ball*, 90 F.3d at 263 (exigent circumstances justified warrantless entry of home where officers observed two people engaged in drug transaction on the porch, and one of the suspects fled into the home after seeing the officers); *United States v. Vance*, 53 F.3d 220, 221-22 (8th Cir. 1995) (exigent circumstances justified warrantless entry of home where officers, aware that there were other individuals and weapons in the home, arrested one suspect outside of the home, and another suspect went back inside to retrieve his identification); *United States v. Munoz*, 894 F.2d 292, 296 (8th Cir. 1990) (exigent circumstances justified warrantless entry of home where, after officers had knocked and announced their identity, they observed an occupant run up the stairs). Because the search of the trailer was legal, Hogan's subsequent statements were not the fruit of an illegal search. The district court did not err in denying Hogan's motion to suppress.

C.

Hogan appeals the denial of his motion to suppress the papers seized from his jail cell, arguing that the seizure and use at trial violated the Fourth and Fifth Amendments. He alleges that this purported constitutional violation was so egregious that the case should have been dismissed with prejudice, or Officer Curtis should have been prevented from testifying.

Hogan contends that the warrantless search of his cell violated the Fourth Amendment. The Supreme Court has held that

> society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *see also Scher v. Engelke*, 943 F.2d 921, 923-24 (8th Cir. 1991) (analyzing prisoner's claim of excessive cell searches under the Eighth Amendment). Hogan cites an earlier Supreme Court decision, *Bell v. Wolfish*, 441 U.S. 520 (1979), to argue that pretrial detainees, as opposed to prisoners, do retain a limited expectation of privacy in their prison cells. However, *Bell* did not decide this issue, instead assuming, for the sake of argument, that pretrial detainees retain a diminished expectation of privacy, before ultimately holding the searches at issue constitutional. *See id.* at 557 ("Assuming, *arguendo*, that a pretrial detainee retains such a diminished expectation of privacy after commitment to a custodial facility, we nonetheless find that the room-search rule does not violate the Fourth Amendment."). Noting that the "Supreme Court in *Hudson* did not contemplate a cell search intended solely to bolster the prosecution's case against a pre-trial detainee awaiting his day in court," the Second Circuit held that " a pre-trial detainee does retain Fourth Amendment protection against searches 'at the instigation of non-prison officials for non-institutional security related reasons.'" *Willis v. Artuz*, 301 F.3d 65, 68 (2nd Cir. 2002), *quoting United States v. Cohen* 796 F.2d 20, 23-24 (2nd Cir. 1986). Even if this court were to adopt this limited exception, it does not apply here, as the search of Hogan's cell was instigated by jail officials for security reasons and was not intended solely to bolster the prosecution's case. *See Hudson*, 468 U.S. at 526-29 (reasoning that a right of privacy in prison cells is incompatible with the need to ensure institutional security). The search was conducted pursuant to

a jail policy after Hogan threatened the jail captain and was put in segregation. Officer Curtis testified that his subsequent review was for security reasons. Hogan had no legitimate expectation of privacy to the papers in his cell. *See id*. at 526. No Fourth Amendment violation occurred.

Hogan also maintains that the introduction of the papers at trial violated the Fifth Amendment because it effectively forced him to testify against himself. The Fifth Amendment provides: "No person shall be . . . compelled in any criminal case to be a witness against himself . . . ." **U.S. Const. amend. V**. "The core protection afforded by the Fifth Amendment is a prohibition on compelling a criminal defendant to testify against himself at trial." *United States v. Frazier*, 408 F.3d 1102, 1109 (8th Cir. 2005), *citing Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (plurality opinion). "The Fifth Amendment's protection applies only when the accused is *compelled* to make a *testimonial communication* that is incriminating." *Barrett v. Acevedo*, 169 F.3d 1155, 1167 (8th Cir. 1999) (emphasis in original), *citing Fisher v. United States*, 425 U.S. 391, 408 (1976). Here, Hogan was not compelled to create the papers. *See United States v. Doe*, 465 U.S. 605, 612 n.10 (1984) ("If the party asserting the Fifth Amendment privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged."); *see also Barrett*, 169 F.3d at 1167-68 (noting that "whether *Doe's* rationale extends to purely personal papers in a defendant's possession is still open to some debate"). "[N]o Fifth Amendment claim can prevail where . . . there exists 'no legitimate expectation of privacy and no semblance of governmental compulsion against the person of the accused." *Barrett*, 169 F.3d at 1168, *quoting Couch v. United States*, 409 U.S. 322, 336 (1973). Hogan had no legitimate expectation of privacy in the papers, as he created and stored them in his jail cell. *See Hudson*, 468 U.S. at 526. No Fifth Amendment violation occurred.

III.

Hogan appeals the denial of his motion for judgment of acquittal, challenging the sufficiency of the evidence. This court reviews de novo the sufficiency of the

evidence supporting a judgment. *United States v. Castro-Gaxiola*, 479 F.3d 579, 581 (8th Cir. 2007). "The evidence is viewed in the light most favorable to the verdict; conflicts are resolved in favor of the government; and, all reasonable inferences from the jury's verdict are accepted." *Id*. The standard is very strict, and this court "will reverse the conviction only if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt." *United States v. Beck*, 496 F.3d 876, 879 (8th Cir. 2007).

Hogan first challenges the sufficiency of the evidence regarding conspiracy to distribute meth. "To prove conspiracy, the Government must show an agreement to achieve an illegal purpose, the defendant's knowledge of the agreement, and the defendant's knowing participation in the conspiracy." *Castro-Gaxiola*, 479 F.3d at 581. A "[t]acit understanding – as opposed to mere presence at and knowledge of an intended drug sale – will suffice; a formal agreement is unnecessary." *United States v. Espino*, 317 F.3d 788, 792 (8th Cir. 2003). The government may use either direct or circumstantial evidence, but often "evidence in a conspiracy case will be circumstantial due to an illegal conspiracy's 'necessary aspect of secrecy.'" *United States v. Tensley*, 334 F.3d 790, 794 (8th Cir. 2003), *quoting United States v. Robinson*, 217 F.3d 560, 564 (8th Cir. 2000).

Hogan contends that the government failed to prove the existence of an agreement, instead showing only that he possessed meth twice and sold it once. He focuses on the lack of evidence that he benefitted or profited from the alleged conspiracy. To the contrary, Hogan admitted fronting meth to other dealers, expecting payment only when they resold the drugs. He admitted, and other witnesses and evidence confirmed, that he frequently traveled to California to transport meth to Missouri. He produced a chart, outlining the pattern of distribution of meth from his source in California through himself to four other dealers. He admitted, and Myers confirmed, that he sent a UPS package with meth to Missouri. This is sufficient evidence of an agreement to distribute meth. *See id.* at 792-94.

Hogan also challenges the sufficiency of the evidence regarding possession of meth with intent to distribute, and distribution of meth. He claims that the jury instructions and verdicts failed to allege dates and locations – essential elements of the offenses. However, "[t]ime is not a material element of a criminal offense unless made so by the statute creating it." *United States v. Youngman*, 481 F.3d 1015, 1019 (8th Cir. 2007); *see also* **21 U.S.C. § 841(a)**. Further, the jury instructions and verdicts referenced the indictment, which specifies both offense dates as "[o]n or about October 17, 2004," and both offense locations as "Stone County, in the Western District of Missouri."

There was sufficient evidence for a reasonable jury, drawing all reasonable inferences, to convict Hogan of all three charges.

## IV.

Hogan asserts two sentencing errors. First, that the district court erred in determining that his relevant conduct involved conspiring to distribute more than 500 grams of meth, resulting in a base offense level of 36. *See* **U.S.S.G. § 2D1.1(c)(2)**. This court reviews "the district court's interpretation of the guidelines de novo, and the court's relevant conduct determination for clear error." *United States v. Allebach*, 526 F.3d 385, 388 (8th Cir. 2008) (internal citations omitted). Hogan reasserts his previous arguments, contending that because much of the evidence should be excluded and the remaining evidence is insufficient to establish a conspiracy, the government did not connect him to a conspiracy involving more than 500 grams of meth. The government's evidence shows these seizures of meth: 314.3 grams during the traffic stop; 130.8 grams from the UPS package; 10.5 grams as part of the controlled buy; and 80.3 grams during the search of Hogan's trailer. This totals 535.9 grams of meth. In addition, Hogan admitted transporting about 1134 grams of meth from California to Missouri. The district court's finding that the conspiracy involved more than 500 grams of meth is not clearly erroneous.

Hogan also maintains that the district court erred in refusing to reduce his base offense level. Under U.S.S.G. § 3B1.2, a sentencing court may decrease the offense level by four if "the defendant was a minimal participant in any criminal activity." This section, intended to be used "infrequently," covers "defendants who are plainly among the least culpable of those involved in the conduct of a group" and who "lack [] knowledge or understanding of the scope and structure of the enterprise and of the activities of others." *See* **U.S.S.G. § 3B1.2, cmt. n.4**. The defendant bears the burden of proving a reduction is warranted. *See United States v. Whiting*, 522 F.3d 845, 851 (8th Cir. 2008). A district court's decision regarding a mitigating role reduction is a question of fact reviewed for clear error. *See United States v. Goodman*, 509 F.3d 872, 875 (8th Cir. 2007).

Hogan argues that he was a minimal participant because the government's evidence established only isolated incidents, not that he had control over or profited from the operations. To the contrary, the evidence established that Hogan regularly transported meth from California to Missouri, actively sold meth and fronted it to other dealers, and instructed others to receive a shipment of meth. The fact that he could draw a chart detailing the pattern of distribution shows that he did not lack "knowledge or understanding of the scope and structure of the enterprise." *See* **U.S.S.G. § 3B1.2, cmt. n.4**. Hogan was not a minimal participant, and the district court did not err. *See United States v. Whirlwind Soldier*, 499 F.3d 862, 873 (8th Cir. 2007) (minimal participant reduction not warranted where the defendant "was an active and frequent seller of methamphetamine and was responsible for coordinating the transportation and distribution of drugs by others").

V.

The judgment of the district court is affirmed.

_____