# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3262

_____

United States of America,

        Appellee,

v.

James K. Bay,

        Appellant.

\*   Appeal from the United States
\*   District Court for the
\*   Eastern District of Missouri.

_____

Submitted: September 20, 2011
Filed: December 7, 2011

_____

Before RILEY, Chief Judge, COLLOTON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After a bench trial, James Bay was convicted of three counts relating to possession and manufacture of methamphetamine and one count of being a felon in possession of a firearm. Bay appeals the district court's[1] denial of his motions to suppress evidence and statements. He argues that the initial seizure of his person that led to the discovery of the evidence in question was an unlawful investigatory

_____

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri, adopting the Report and Recommendations of the Honorable Thomas C. Mummert, III, United States Magistrate Judge for the Eastern District of Missouri.

detention because he was inside his home at the time that it occurred. Because the district court did not clearly err in finding that Bay was outside his home at the time that he was seized, we affirm the decision of the district court.

## I.    BACKGROUND

At about 10:00 p.m. on March 15, 2010, Deputy Matthew T. Harris of the St. Francois County Sheriff's Department was driving north on U.S. Route 67 at a point where it runs parallel to Berry Road in Bonne Terre, Missouri, when through the closed window of his car he smelled a potent odor that he identified as ether, a substance that he knew from numerous previous investigations to be associated with the production of methamphetamine. Later, at about 2:00 a.m. on the morning of March 16, Deputy Harris again smelled ether near the same location and was able to pinpoint the odor as emanating from 8710 Berry Road, where Bay resided in a mobile home.

After calling for backup, Deputy Harris drove up the driveway at the location in question and, although initially seeing no one, soon observed Bay walk out onto his porch. As Deputy Harris stepped out of his vehicle, Bay spotted him and began to walk back inside his home. Deputy Harris ordered him to stop. After questioning Bay, Deputy Harris asked for and received permission to search a camping trailer and attached shed adjacent to the mobile home. Looking through the window of the camping trailer, Deputy Harris observed what he suspected to be a methamphetamine laboratory.

After further questioning, another officer accompanied Bay into his home with Bay's consent and observed in plain view methamphetamine and drug paraphernalia. After receiving further consent to search from Bay, officers more thoroughly inspected both the camping trailer and the mobile home and discovered an operating methamphetamine laboratory, methamphetamine, and methamphetamine precursor

chemicals. Bay admitted to the officers that he had manufactured methamphetamine. The officers also found a shotgun in the mobile home.

A federal grand jury returned an indictment charging Bay with three counts relating to possession and manufacture of methamphetamine and one count of being a felon in possession of a firearm. Bay filed motions to suppress the evidence gathered and statements made on the night in question on the ground that they were "fruits" of the seizure of his person made in violation of the Fourth Amendment. A magistrate judge presided over a suppression hearing and recommended that the district court deny the motions. The district court adopted the magistrate judge's report over Bay's objection. After a bench trial, the district court found Bay guilty of all four counts and sentenced him to 140 months' imprisonment. Bay timely appeals.

## II.    DISCUSSION

We affirm a denial of a motion to suppress unless the district court's decision "is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *United States v. Annis*, 446 F.3d 852, 855 (8th Cir. 2006) (quoting *United States v. Jones*, 275 F.3d 673, 678-79 (8th Cir. 2001)). We review "the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo." *United States v. Hogan*, 539 F.3d 916, 921 (8th Cir. 2008) (quoting *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

Bay contends that Deputy Harris's initial seizure of his person violated the Fourth Amendment because it was warrantless, unsupported by probable cause, and

not within the ambit of the investigatory stop exception recognized by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 30 (1968), as it took place inside Bay's home. The district court, though, found that Bay was outside of his home at the time that he was seized, and based on the record we cannot conclude that this finding was clearly erroneous.

In the findings of fact supporting his recommendation of denial of Bay's motions to suppress, the magistrate judge found that "Deputy Harris ordered Defendant to stop and not to enter his home; Defendant complied." In its order adopting the magistrate judge's factual findings and recommendations, the district court specifically found that "there is no evidence that Bay was inside his residence when the deputy detained him." Bay argues on appeal that Deputy Harris's testimony makes it clear that Bay was already inside his home at the moment of detention.

Although some of Deputy Harris's testimony, considered in isolation, suggests that Bay had managed to reenter his home when Deputy Harris ordered him to stop, there also is sufficient testimony to support the finding that Bay was still outside at the moment of his seizure. Specifically, during the suppression hearing, Deputy Harris responded in the affirmative when he was asked, "When you first made contact with him, [Bay] was outside the home; is that correct?" Deputy Harris then testified that, after he called out to Bay to stop, Bay stopped. Deputy Harris went on to say on a number of occasions that he had "called him back outside," implying that Bay had gotten inside his home before being ordered to stop. But Deputy Harris clarified in his responses to further questioning that while Bay "was physically moving back inside his house" at the time of seizure, he had not "allow[ed Bay] to finish that." On the basis of this testimony, we find the district court's factual determination that Bay was outside when he was seized by Deputy Harris to be a permissible view of the evidence and, therefore, not clearly erroneous. *See Anderson*, 470 U.S. at 574.

Deputy Harris's observations, including the pervasive smell of ether coming from Bay's house, and his experience in methamphetamine laboratory investigations support a reasonable suspicion of criminal activity within the meaning of *Terry*. *See, e.g.*, *United States v. Shafer*, 608 F.3d 1056, 1063 (8th Cir. 2010) (finding the presence of marijuana odor to contribute to reasonable suspicion); *United States v. Binion*, 570 F.3d 1034, 1039 (8th Cir. 2009) (same); *United States v. Foley*, 206 F.3d 802, 806 (8th Cir. 2000) (finding the presence of an odor used to mask drugs to contribute to reasonable suspicion); *see also Kleinholz v. United States*, 339 F.3d 674, 677 (8th Cir. 2003) ("The smell of ether might alone support a finding of probable cause."). In addition, being detained outside of one's home poses no barrier to a lawful *Terry* stop. *See United States v. Hernandez-Hernandez*, 327 F.3d 703, 706 (8th Cir. 2003) (finding lawful a *Terry* stop that occurred in the detainee's front yard). Because we find no clear error in the district court's determination that Bay was outside his home at the time of his seizure and because there was reasonable suspicion to support a *Terry* stop, we hold that the seizure of Bay's person was valid under the Fourth Amendment, and therefore we conclude that the evidence subsequently discovered and statements subsequently made were admissible.

## III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____