# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1398
_____

United States of America

*Plaintiff - Appellant*

v.

David A. Callison

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 15, 2021
Filed: July 2, 2021

_____

Before LOKEN, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

The district court granted David A. Callison's motion to suppress drug-related evidence that the Des Moines police uncovered during a traffic stop. The government appeals that decision. We reverse.

# I. Background

In the middle of the night, Officer Andrew Kilgore saw a car driving through a residential area with a broken license-plate light. He followed the car for several blocks and activated his emergency lights after the car pulled into a driveway. After boxing the car in, he briefly turned off his headlights to confirm that the license plate was not lit. It wasn't. And that violated Iowa law.[1]

Officer Kilgore then walked to the driver's side. Three people sat inside: (1) Timothy Rios was driving; (2) Kelly Shannon was the front passenger; and (3) Callison was in the backseat. Officer Kilgore mentioned the broken light and asked Rios for his license, registration, and insurance. He then asked Rios who owned the car and why Rios was stopped at this particular house. "Dropping off a friend," Rios responded. He gave Officer Kilgore his license but could not find proof of registration or insurance. Officer Kilgore returned to his cruiser to check the police records. As it turned out, Rios had a valid license, a properly registered car, and no outstanding warrants.

When Officer Kilgore returned to the car several minutes later, Rios still had not found proof of insurance. Officer Kilgore then shined his flashlight in the backseat and asked Rios a series of questions around five minutes into the encounter. He first asked Rios, "What's the address here? Tell me what's the address here, without looking?" Rios couldn't. Officer Kilgore next asked, "Then why did you stop here? Why are you sweating profusely?" Rios answered that they were "dropping off a friend." Officer Kilgore then asked, "What is the friend's name?" Simultaneously, Callison said, "Neil," while Shannon said, "Rob." After making further comments about Rios's perspiration, the temperature, and the unknown

---

[1]Section 321.388 of the Iowa Code provides: "Either the rear lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear."

address, Officer Kilgore asked—around six minutes into the encounter—what was "illegal in the car or on [Rios] that [Kilgore] need[ed] to know about?"

Officer Kilgore called for backup. He continued the questioning and then ordered Rios out of the car. When asked again why he was sweating, Rios said, "Because I'm nervous, maybe."

When backup arrived, the officers ordered Shannon and Callison out of the car. Shannon dropped a cigarette pack as she got out. Officer Kilgore picked it up and found a substance inside that field tested as methamphetamine. He then searched the car and found a duffle bag inside that contained methamphetamine, digital scales with methamphetamine residue, two prescription-drug bottles, and a large amount of cash. The officers arrested Callison along with the other two, got a warrant for Callison's home after interviewing him, and then searched his home.

Callison moved to suppress the drug-related evidence from the vehicle, as well as his statements and other evidence later found at his home. He argued that Officer Kilgore unlawfully prolonged a routine traffic stop without reasonable suspicion and argued that the evidence against him should be excluded as fruit of the poisonous tree. The district court granted the motion, concluding that Officer Kilgore unlawfully extended the traffic stop when he began asking travel-related questions without reasonable suspicion. The government now appeals.

## II.  Analysis

The government first argues that Officer Kilgore did not extend the traffic stop until he asked Rios if there was anything illegal in the car roughly six minutes into the encounter. We agree.

In the motion-to-suppress context, we review a district court's legal conclusions de novo and its factual findings for clear error. *See United States v. Murillo-Salgado*, 854 F.3d 407, 414 (8th Cir. 2017). The Fourth Amendment makes

"unreasonable searches and seizures" unlawful. U.S. Const. amend IV. A traffic stop is a Fourth Amendment seizure and requires probable cause of a traffic violation. *See United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). "[A]ny traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001). Here, the district court concluded that Officer Kilgore had probable cause to initiate the traffic stop because he observed that Rios's license plate was unlit in violation of Iowa law. *See* Iowa Code § 321.388. The initial stop itself was therefore lawful.

But a lawfully-initiated traffic stop can become unlawful if it is unreasonably extended. "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (alterations in original) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). In *Caballes*, the Supreme Court held that using a drug dog to sniff around a car during a lawful traffic stop did not violate the Fourth Amendment when the stop *did not* last longer than needed to issue a warning ticket and conduct ordinary inquiries. 543 U.S. at 407, 410. A decade later, adhering to *Caballes*'s principle, *Rodriguez* expressly held "that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." 575 U.S. at 350 (rejecting reasoning then followed in this circuit that *de minimis* extensions to traffic stops are acceptable to allow for dog sniffs or other investigative measures).

Here, the district court held that Officer Kilgore unlawfully extended the traffic stop roughly five minutes into the encounter when he first began asking travel-related questions. But it is clear from the facts that Rios was still searching for proof of his insurance at that point. So, when Officer Kilgore asked his initial series of travel-related questions between five and six minutes into the encounter, he was still "handl[ing] the matter for which the stop was made"—here "issuing a ticket for the [unlit-license-plate] violation." *Id.* at 350–51. Just like in *Caballes*, where the

-4-

Supreme Court upheld a dog sniff that did not extend a traffic stop, 543 U.S. at 407, 410, here Officer Kilgore's initial questions between five and six minutes into the encounter did not extend the stop either.

We therefore conclude that the district court erred in holding that Officer Kilgore needed reasonable suspicion of another crime to extend the stop when he began asking travel-related questions five minutes into the encounter. Because Officer Kilgore was still "handl[ing] the matter for which the stop was made" at that point, *Rodriguez*, 575 U.S. at 350, his questions between five and six minutes into the encounter did not extend the stop.[2]

## 2. Reasonable Suspicion to Extend the Stop

The government next argues that by the time Officer Kilgore asked if there was anything illegal in the car (around six minutes into the encounter), he had the reasonable suspicion required to extend the stop. Again, we agree.

---

[2]Because Rios was still searching for his insurance information (and had not indicated he did not have it) when Officer Kilgore asked his initial series of travel-related questions, the stop was not extended by the officer's questions. As a result, we do not reach the more difficult question of the extent to which officers may ask travel-related questions during a routine traffic stop after *Rodriguez*. 575 U.S. at 350–51, 354 (limiting the acceptable activities during a traffic stop to those "reasonably required to complete the mission of issuing a ticket for the violation" and "attending to related safety concerns" (cleaned up)). It is clear under *Rodriguez* that investigating general criminal wrongdoing is outside a routine traffic stop's purposes. *Id.* at 355. In some post-*Rodriguez* cases we have at least suggested that travel-related questions remain a "permissible" part of routine traffic stops in the Eighth Circuit. *See, e.g.*, *Murillo-Salgado*, 854 F.3d at 415; *United States v. Englehart*, 811 F.3d 1034, 1040 (8th Cir. 2016). This is not surprising. As the district court held below, after *Rodriguez* an officer may ask travel-related questions that are rationally related to the purposes of the traffic stop—issuing a traffic citation and ensuring roadway safety. Under the facts here, though, where there was no extension of the stop, we need not decide whether the questions asked by Officer Kilgore were permissible under the *Rodriguez* standard.

To extend a routine traffic stop, an officer needs reasonable suspicion of additional criminal activity. *See Rodriguez*, 575 U.S. at 355. Reasonable suspicion requires "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a brief investigative stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). This standard is "less demanding" than probable cause and much lower than preponderance of the evidence. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). In the traffic-stop context, actions that characterize "a very large category of presumably innocent travelers" will not meet the standard. *Reid v. Georgia*, 448 U.S. 438, 441 (1980).

We have held in the past that each of the following factors, in combination with others, can help support reasonable suspicion: (1) unusual driving behavior, *see United States v. Walker*, 555 F.3d 716, 720 (8th Cir. 2009); (2) attempts to evade officers, *see United States v. Noonan* , 745 F.3d 934, 936 (8th Cir. 2014); (3) indirect or incomplete answers to officer questions, *see Murillo-Salgado*, 854 F.3d at 416; (4) nervousness and lack of eye contact, *see United States v. Foley*, 206 F.3d 802, 804, 806 (8th Cir. 2000); and (5) "seeming implausibilities and inconsistencies in the responses to [an officer's] routine questions" about travel plans. *See United States v. Hogan*, 539 F.3d 916, 919, 921 (8th Cir. 2008).

Here, we conclude that the following facts, taken together, supported reasonable suspicion for Officer Kilgore to extend the stop around the six-minute mark: (1) the car pulled into a residential driveway after Officer Kilgore followed it for a brief time without activating his lights; (2) it was the middle of the night; (3) Rios was avoiding eye contact and behaving nervously during the encounter; (4) no one in the car knew the address or street where they stopped; and (5) the driver said they were dropping off a friend, but the two passengers gave different names for that friend.

We have concluded that reasonable suspicion was present in similar cases. *See Murillo-Salgado*, 854 F.3d at 416; *Walker*, 555 F.3d at 720; *Hogan*, 539 F.3d at 919, 921; *Foley*, 206 F.3d at 804, 806. In *Hogan*, for example, we held that

nervousness and inconsistent answers to questions were enough for reasonable suspicion. 539 F.3d at 919, 921. Similarly, in *Foley*, we held that officers had reasonable suspicion to extend a stop where the driver could not remember the name of his daughter-in-law, gave inconsistent answers about travel plans, was nervous, and did not make eye contact. 206 F.3d at 804, 806. Thus, we hold that by the time Officer Kilgore extended the stop, he had developed reasonable suspicion of another crime.

## III. Conclusion

For these reasons, we vacate the district court's suppression order and remand for further proceedings not inconsistent with this opinion.

_____