# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1237

_____

United States of America,

        Appellee,

v.

Dion A. Brown,

        Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* District of Nebraska.
\*
\*
\*

_____

Submitted: November 19, 2010
Filed: March 9, 2011

_____

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

Following the district court's[1] denial of Dion A. Brown's motion to suppress evidence seized during a warrantless search of a vehicle in which Brown was a passenger, a jury found Brown guilty of being a felon in possession of a firearm. The district court sentenced Brown to 78-months imprisonment. Brown appeals the denial of his motion to suppress, his conviction, and his sentence. We affirm.

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

## I. BACKGROUND

### A. Facts

On the evening of January 2, 2009, Brown, his girlfriend Tonia Murray, and his friend Johan Anderson were traveling westbound on Nebraska Highway 2 near Dunbar when Murray's Dodge Intrepid broke down. Believing her car was out of oil, Murray called and asked a friend to deliver oil.

At approximately 11:30 p.m., Otoe County Deputy Sheriff Cody Starner observed Murray's disabled vehicle on the shoulder with its hazard lights flashing. Deputy Starner pulled up behind the vehicle, activated his patrol lights,[2] and approached the driver side of the vehicle.

Murray, who was seated in the driver's seat, rolled down her window, and Deputy Starner asked Murray "if she needed any assistance or if she had help on the way." Deputy Starner smelled burnt marijuana and asked, "Who's smoking the weed?" Anderson, who was lying down in the back seat, sat up and admitted smoking marijuana.

Deputy Starner then escorted Anderson to his patrol vehicle, while Murray and Brown remained seated in Murray's vehicle. Deputy Starner called for backup and questioned Anderson. Anderson consented to a search of his bag, which was located in the trunk of Murray's vehicle.

Deputies Colin Caudill and Brian Briley soon arrived and Deputy Starner explained the situation to them. Deputy Starner again approached Murray's vehicle

---

[2]By activating his patrol vehicle's lights, Deputy Starner also activated the vehicle's in-car camera, which recorded the encounter. When Deputies Colin Caudill and Brian Briley arrived at the scene, they also activated their vehicle's overhead lights and recorded part of the encounter. All three recordings were received in evidence and available for the jury to review.

and asked Murray if he could search the trunk for Anderson's bag. Murray agreed and opened the trunk. Deputy Starner searched Anderson's bag, but did not find any marijuana. Meanwhile, Deputy Caudill went to the front passenger side and opened the door. Deputy Caudill smelled the odor of burnt marijuana while he briefly questioned Brown. Deputy Caudill asked Brown to exit the vehicle, patted down Brown, and, finding nothing at that time, allowed him to return to Murray's vehicle.

Deputies Caudill and Briley decided to search Murray's entire vehicle and once again asked Brown to exit the vehicle. Deputy Briley then pat searched Brown and found a small amount of marijuana on him. Deputy Caudill informed Brown that a small amount of marijuana was "not a big deal" and "just an infraction." After the search, Deputy Briley escorted Brown to his patrol vehicle, which had a back seat modified to transport both a canine and a prisoner. The deputy placed Brown in the patrol vehicle for officer safety and because it was a cold January night. Before putting Brown in the patrol vehicle, Deputy Briley advised Brown he was only being detained, not arrested, and would be free to leave if nothing were found in the vehicle.

Deputy Briley then interviewed Murray outside her vehicle, while Deputy Caudill searched the vehicle. During the search, Deputy Briley stayed outside with Murray, while Deputy Starner was in his patrol vehicle with Anderson. Deputy Caudill soon found a loaded Bryco .380 caliber semi-automatic handgun underneath a McDonald's bag on the floor board in front of the front passenger seat.

Deputy Briley handcuffed Murray and placed her in Deputy Caudill's patrol vehicle. Deputy Starner asked Anderson if there were any other guns in the vehicle and Anderson replied there was a gun under a jacket on the backseat. Deputy Caudill then looked in the backseat and found the second gun. Deputy Starner handcuffed Anderson and the search continued. After the search was complete, Deputy Briley returned to his vehicle and arrested Brown as a felon in possession of a firearm.

## B.     Prior Proceedings

In April 2009, a federal grand jury indicted Brown on the charge of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Brown filed a motion to suppress evidence of the handgun, arguing the search was unconstitutional because Brown was in police custody during the search and the warrantless search could not be justified as a "search incident to arrest" under Arizona v. Gant, __ U.S. __, 129 S. Ct. 1710 (2009).  The district court denied Brown's motion to suppress, declaring Gant inapplicable because Brown was not under arrest during the search.  The district court also decided the vehicle search "was lawfully performed pursuant to the automobile exception to the warrant requirement" because the officers' detection of "the smell of burnt marijuana emanating from the Dodge Intrepid" provided probable cause to search the entire vehicle.

A jury trial ensued.  The government called five witnesses, including all three officers involved in the vehicle search, and introduced evidence of the three recordings from the patrol vehicle cameras.  Murray testified for Brown.  Brown moved for acquittal at the end of the government's case and renewed his motion at the close of all the evidence.  The district court denied both motions and filed a memorandum explaining its denials.  The jury found Brown guilty of being a felon in possession of a firearm.

The district court calculated Brown's offense level at 20 with a criminal history category of V, resulting in an advisory Guidelines range of 63 to 78 months.  After considering all of the factors listed at 18 U.S.C. § 3553(a), the district court sentenced Brown to 78 months imprisonment and 3 years supervised release.  Brown appeals (1) the district court's denial of his motion to suppress, (2) the sufficiency of evidence supporting his conviction, (3) the racial composition of the venire panel, and (4) the reasonableness of his sentence.

## II.  DISCUSSION

### A.  Motion to Suppress

Brown first challenges the district court's denial of his motion to suppress evidence of the .380 caliber handgun, arguing it was seized pursuant to a warrantless search of the vehicle in violation of the Fourth Amendment.  "[W]e review the lower court's factual findings for clear error and its legal conclusions *de novo*."  United States v. Grooms, 602 F.3d 939, 942 (8th Cir.), cert. denied, _ U.S. _,131 S. Ct. 491, 178 L.Ed.2d 311 (2010).

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  Katz v. United States, 389 U.S. 347, 357 (1967) (footnotes omitted).  One such exception is the automobile exception, which allows law enforcement to "search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity."  United States v. Davis, 569 F.3d 813, 817 (8th Cir. 2009) (quoting United States v. Cortez-Palomino, 438 F.3d 910, 913 (8th Cir. 2006) (per curiam) (internal quotation marks omitted)).  "Probable cause exists where there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'"  United States v. Donnelly, 475 F.3d 946, 954 (8th Cir. 2007) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

We agree with the district court that "[t]he search of the Dodge Intrepid was lawfully performed pursuant to the automobile exception to the warrant requirement."  In Davis, we found probable cause justified a warrantless search under the automobile exception where a police officer smelled the odor of marijuana as he approached a vehicle, asked the driver to exit the vehicle, performed a pat-down search of the driver, and discovered a lump, which the driver admitted was marijuana.  Davis, 569 F.3d at 815, 817-18.  We reasoned "any doubt whether the smell of smoldering cannabis constituted probable cause to search the vehicle . . . was obviated by the discovery of

a bag of marijuana in Davis's pocket." Id. at 818; see also United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) (stating "detection of the smell of burnt marijuana . . . gave [the officer] probable cause to search the entire vehicle for drugs"). Here, Deputies Starner and Caudill each smelled the distinct odor of burnt marijuana emanating from the vehicle. When asked about the odor, Anderson admitted smoking marijuana. Considering these circumstances, there was a reasonable probability marijuana was located inside the vehicle and the officers had probable cause to search the entire vehicle for illegal drugs.

Because the search was justified by the automobile exception, it is unnecessary to determine whether the search was also justified by the search incident to arrest exception. See United States v. Webster, 625 F.3d 439, 445 (8th Cir. 2010) (explaining "[w]arrantless searches need only be justified by one exception to the Fourth Amendment warrant requirement"). We therefore dismiss as irrelevant Brown's argument the search ran afoul of the Supreme Court's holding in Gant.

**B.      Sufficiency of the Evidence**

Brown challenges the sufficiency of the evidence, arguing the government failed to prove beyond a reasonable doubt Brown was guilty of being a felon in possession of a handgun. We review challenges to the sufficiency of the evidence de novo. United States v. Clay, 618 F.3d 946, 950 (8th Cir. 2010), cert. denied, _ U.S. _, 2011 WL 196304, _ L.Ed.2d _ (Feb. 22, 2011). We will "reverse[] only if no reasonable jury could have found the defendant guilty." Id. We must sustain a conviction when the evidence, viewed in a light most favorable to the government, substantially supports the verdict. Id.

"To convict [Brown] as a felon in possession of a firearm, the government must prove beyond a reasonable doubt (1) a previous conviction for a crime punishable by imprisonment over one year, and (2) knowing possession of a firearm (3) that was in or affected interstate commerce." United States v. Smart, 501 F.3d 862, 865 (8th Cir.

2007) (citing 18 U.S.C. § 922(g)(1)).  On appeal, Brown argues the government failed to prove the second element—knowing possession of a firearm.  We disagree.

"Possession can be actual or constructive.  Actual possession is the knowing, direct, and physical control over a thing."  United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004) (citation omitted).  "Constructive possession is established by proof that the defendant had control over the place where the firearm was located, or control, ownership, or dominion of the firearm itself."  United States v. Cox, 627 F.3d 1083, 1085 (8th Cir. 2010).  "Possession may be joint; it need not be exclusive," Smart, 501 F.3d at 865, and "may be based on circumstantial evidence which is 'intrinsically as probative as direct evidence.'"  United States v. Bradley, 473 F.3d 866, 867 (8th Cir. 2007) (quoting United States v. Patterson, 886 F.2d 217, 219 (8th Cir. 1989) (per curiam)).

A reasonable jury could find Brown knowingly possessed the handgun.  As the district court noted, the loaded gun "was found on the floor board of the front passenger seat underneath a flat paper bag only inches away from where [Brown]'s left foot rested and also" a console divided the passenger seat from the driver's seat. Brown was the only person who sat in the passenger seat during the nearly completed 380-mile round trip from Lincoln, Nebraska to Kansas City, Missouri and back. Considering these facts, it was reasonable for the jury to infer Brown knew about and had control over the firearm resting inches away from his feet for multiple hours.

Moreover, police found approximately $1,990 in cash in the console near where the gun was found, a small amount of marijuana on Brown's person, and an ounce of cocaine hidden in Murray's brassiere.  The presence of drugs and cash in close proximity to the loaded gun makes it more likely Brown knowingly possessed a firearm to protect himself, his girlfriend, the drugs, and the cash.  See United States v. Vanover, Nos. 09-3571 & 09-3599, _ F.3d _, _ 2011 WL 101733, at *8 (8th Cir. Jan.

13, 2011) (per curiam) (recognizing "drug dealers commonly use firearms for intimidation and protection").

Brown contends the evidence was insufficient because an unknown person might have left the gun in Murray's automobile, particularly because Murray used the vehicle to operate an unlicensed "jitney" cab service before their trip to Kansas City. We disagree, because "the presence of one possible 'innocent' explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a reasonable doubt." United States v. Maloney, 466 F.3d 663, 667 (8th Cir. 2006). We also reject Brown's argument the government mishandled the gun and failed to present any fingerprint evidence linking the handgun to Brown which casts reasonable doubt upon whether Brown possessed the gun. While such "[f]ingerprint evidence might have strengthened the [government's] case, . . . it is not required to convict." United States v. McCraney, 612 F.3d 1057, 1064 (8th Cir. 2010), petition for cert. filed (U.S. Nov. 19, 2010) (No. 10-7693).

### C.    Batson Challenge

Brown argues he was denied equal protection because "there were no members of . . . Brown's race, a man of biracial ethnic background, present upon the venire panel." The record supports the government's contention that "Brown did not object to the jury panel, did not make a Batson [v. Kentucky, 476 U.S. 79 (1986)] challenge at the time of trial, passed the jury for cause, and made no objection to any strikes made by the government." Because we find no evidence of Brown objecting during the voir dire process, with Brown's actual acceptance of the jury, we find Brown's untimely challenge waived. See United States v. Parnham, 16 F.3d 844, 847 (8th Cir. 1994) (holding "a Batson objection must be made at the latest before the venire is dismissed and before the trial commences.").

## D. Sentence

Brown challenges the substantive reasonableness of his sentence. We utilize an abuse of discretion standard when reviewing a district court's sentencing decisions. See United States v. Garcia, 512 F.3d 1004, 1006 (8th Cir. 2008). We presume a sentence reasonable where it falls within the Guidelines range. Id. "In imposing a sentence, 'an abuse of discretion may occur when (1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but in weighing those factors commits a clear error of judgment.'" Id. (quoting United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005)).

We find no abuse of discretion in this case. The district court considered the § 3553(a) factors and imposed a substantively reasonable sentence within the Guidelines range. We reject as irrelevant Brown's contention that his 78-month sentence was unreasonable simply because it was longer than the 60-month sentence imposed on Anderson, who pled guilty to being a felon in possession of a firearm, suggesting Brown was "penalized because he exercised his *6th Amendment* right." See, e.g., Garcia, 512 F.3d at 1006 (declaring the "fact that . . . co-defendants received sentences lower than [defendant's] does not indicate his sentence is disproportionate or unreasonable").

## III. CONCLUSION

We affirm the judgment and the district court's sentence.

_____