# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3581

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the Western |
| | * District of Missouri. |
| Claude X, also known as Claude | * |
| Turner, | * |
| | * |
| Appellant. | * |

_____

Submitted: June 16, 2011
Filed: August 3, 2011

_____

Before BYE and MELLOY, Circuit Judges, and SMITH CAMP,[1] District Judge.

_____

SMITH CAMP, District Judge.

Following the district court's[2] denial of Claude X's motion to suppress evidence seized during a warrantless search of his vehicle, a jury found X guilty of various drug and firearm charges, including one count of use of a firearm during and in relation to drug trafficking crimes. The district court sentenced X to life in prison and a 10-year

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri, Southern Division.

term of supervised release. X appeals the denial of his motion to suppress and his conviction for use of a firearm during and in relation to drug trafficking crimes. We affirm.

## I. BACKGROUND

### A.  Facts

On January 9, 2007, Officers Daniel Ashton and Shannon Stoneman of the Springfield, Missouri, Police Department conducted a traffic stop of a vehicle driven by X. The purpose of the stop was to arrest X's passenger, Melissa Owen, who had a pending warrant for check-kiting. Once the officers made visual contact with Owen, Officer Ashton stopped X's vehicle and instructed Owen to get out of the vehicle. When Owen exited the vehicle, she did not bring her belongings with her. While Officer Ashton detained Owen, Officer Stoneman called dispatch to verify Owen's warrant and requested backup from a K-9 officer. Ten to fifteen minutes later, dispatch confirmed Owen's warrant. At that time, Officer Ashton placed Owen under arrest. At about the same time, the K-9 officer, Officer Phillip Yarnell, arrived at the scene with his service dog, Marko.

After Officer Ashton arrested Owen, Officer Stoneman instructed X to get out of the vehicle so that the officers could search it. X exited the vehicle, however, he also locked the vehicle and refused to allow the officers to search it. Officer Stoneman then handcuffed X for obstruction and took the vehicle's keys from X. At that time, Officer Yarnell directed Marko to search (sniff) the exterior of X's vehicle. Marko alerted to the vehicle's rear bumper. When Marko alerted, Owen's belongings, including her purse, were locked inside X's vehicle. Following Marko's alert, the officers began to search the trunk of the vehicle. During the search, Marko got into the trunk and indicated toward some containers. The officers searched the containers and found drugs inside of them. The officers also found a briefcase containing a weighing scale in the trunk. Eventually, the officers' search extended to the engine

compartment and the interior of the vehicle. In the front console of the vehicle, officers found several pill bottles bearing X's alias.

More than one year later, in 2008, DEA Agent Timothy C. Krisik employed Josh Ridgway as a paid confidential informant to make recorded phone calls to, and purchase drugs and a handgun from, X and his associates. One such associate was Aarika Tracy. X used Tracy to sell drugs. X would call Tracy on the phone and tell her who wanted drugs, how much he or she wanted, how much to charge, and where to meet the person. On April 28, 2008, Tracy sold Ridgway a quantity of cocaine at X's direction. On June 13, 2008, X gave Tracy a black case containing heroin and a .380 caliber handgun and drove her to a parking lot where she sold the case to Ridgway for one thousand dollars: five hundred dollars for the heroin and five hundred dollars for the gun. At trial, Tracy identified Government Exhibit 60 as the gun she sold to Ridgway—and as the gun X previously had used to threaten Tracy when she refused to make a drug sale for him.

## B.    Prior Proceedings

In December 2009, a federal grand jury returned an eighteen-count indictment against X. As relevant here, Count 1 charged conspiracy to distribute cocaine, crack cocaine, heroin, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), 846, and 851; Count 11 charged use of a firearm during and in relation to a drug trafficking crime, i.e., Count 1 and Count 12; and Count 12 charged distribution of heroin, in violation of 18 U.S.C. § 2, and 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 851. X filed a motion to suppress evidence of the drugs seized from his vehicle[3] on January 9, 2007, arguing the warrantless search of his vehicle violated the dictates of the

---

[3]X also sought the suppression of evidence seized from his house, however, in this appeal, he does not challenge the district court's denial of his motion as it relates to such evidence.

"search incident to arrest" doctrine announced by the Supreme Court in *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). The district court denied X's motion to suppress, determining the vehicle search was lawfully performed pursuant to the automobile exception to the warrant requirement because Marko's alert on the rear bumper of the vehicle provided probable cause to search the entire vehicle. The district court also declared *Gant* irrelevant because the search was lawful under the automobile exception.

A jury trial ensued. The government called several witnesses, including Agent Krisik, Officer Stoneman, Ridgway, and Tracy, and introduced evidence of several recorded phone calls involving X. At the close of all evidence, X moved for a judgment of acquittal as to Count 11. The district court denied his motion. The jury found X guilty of Counts 1, 2, 3, 4, 5, 6, 8, 10, 11, 12, 13, and 15.[4] After the verdict was entered, X filed a motion for new trial and a supplemental motion for new trial on, *inter alia*, the basis of juror misconduct. The district court denied both motions and filed an order explaining its denials.

The district court sentenced X to life in prison on Count 1. As to Counts 2, 3, 4, 6, 12, and 15, the district court sentenced X to three hundred and sixty (360) months, to run concurrently. As to Counts 5 and 13, the district court sentenced X to four hundred and eighty (480) months, to run concurrently. As to Count 11, the district court sentenced X to sixty (60) months, to run consecutively to Count 1. The district court also sentenced X to ten years supervised release. X appeals (A) the district court's denial of his motion to suppress and (B) the sufficiency of the evidence supporting his conviction as to Count 11.[5]

---

[4]X was found guilty of every count that was submitted to the jury.

[5]X does not raise any sentencing issue on appeal.

## II. DISCUSSION

### A. Motion to Suppress

First, X challenges the district court's denial of his motion to suppress evidence seized from his car during the January 9, 2007, traffic stop. For reversal, X argues the evidence was seized pursuant to a warrantless search of his vehicle in violation of the Fourth Amendment. On appeal from the denial of a motion to suppress, we review the district court's findings of fact for clear error and its legal conclusions de novo. *United States v. Vanover*, 630 F.3d 1108, 1114 (8th Cir. 2011).

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnotes omitted). "One such exception is the automobile exception, which allows law enforcement to 'search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity.'" *United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011) (quoting *United States v. Davis*, 569 F.3d 813, 817 (8th Cir.2009)). "Probable cause exists where there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir.2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). It is well settled law that a dog's alert during a canine search "of a vehicle provides probable cause that drugs are present in the vehicle, thereby justifying a search of the vehicle." *United States v. Mohamed*, 600 F.3d 1000, 1004 (8th Cir. 2010) (citing *United States v. Bloomfield*, 40 F.3d 9010, 919 (8th Cir. 1994) (en banc)).

We agree with the district court's finding that the search of X's vehicle was lawfully performed pursuant to the automobile exception to the Fourth Amendment warrant requirement. As an initial matter, X concedes two points: (1) the officers

lawfully stopped his vehicle for the purpose of arresting Owen; and (2) no search was conducted until after Marko alerted to the rear bumper. Accordingly, because the initial stop and the ultimate search of the vehicle were both lawful, suppression would be appropriate only if the lawful stop became unlawful because it was "prolonged beyond the time reasonably required to complete" the arrest of Owen. *United States v. Rivera*, 570 F.3d 1009, 1012-13 (8th Cir. 2009). The district court made a specific factual finding that when Officer Yarnell directed Marko to search (sniff) the exterior of X's vehicle, the officers had not concluded their routine procedures pertaining to the arrest of Owen. Specifically, the district court found that "Owen's possessions (including her purse) were still in [X]'s car, and the police had not finished processing [Owen's] arrest." These findings are not clearly erroneous. As such, the lawful stop was not "prolonged beyond the time reasonably required to complete" the arrest of Owen. *Id*.

Finally, X's assertion that the search of his vehicle violated the dictates of *Arizona v. Gant* is unavailing, as the search of X's vehicle was justified under the automobile exception, and analysis under the search-incident-to-arrest doctrine is unnecessary and irrelevant. *See United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011) ("Because the search was justified by the automobile exception, it is unnecessary to determine whether the search was also justified by the search incident to arrest exception.").

## B. Sufficiency of the Evidence

Second, X challenges the district court's denial of his motion for judgment of acquittal as to the charge of use of a firearm during and in relation to drug trafficking crimes, arguing the government failed to prove beyond a reasonable doubt X "used" a firearm within the meaning of 18 U.S.C. § 924(c)(1)(A). "We review the denial of a motion for a judgment of acquittal *de novo*, with all evidence viewed in the light most favorable to the nonmoving party, the Government. We will reverse only if no

reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." *United States v. Faulkner*, 636 F.3d 1009, 1021 (8th Cir. 2011) (citing *United States v. Robertson*, 606 F.3d 943, 953 (8th Cir. 2010)).

Three separate crimes are enumerated in 18 U.S.C. § 924(c)(1)(A): (1) *using* a firearm during and in relation to a crime of violence or drug trafficking crime; (2) *carrying* a firearm during and in relation to a crime of violence or drug trafficking crime; and (3) *possessing* a firearm in furtherance of a crime of violence or drug trafficking crime. *See Abbott v. United States*, 131 S.Ct. 18, 22, 178 L.Ed.2d 348 (2010); *see also United States v. Kent*, 531 F.3d 642, 654 (8th Cir. 2008). The distinction between the offenses is more than trivial. For example, although the "use" offense requires more than simple possession, *Bailey v. United States*, 516 U.S. 137, 143, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the "during and in relation to" requirement of the "use" and "carry" offenses is a lesser standard than the "in furtherance of" requirement of the possession offense, *United States v. Gamboa*, 439 F.3d 796, 810 (8th Cir.2006). The Indictment charged that X used or[6] carried a firearm during and in relation to a drug trafficking crime, however, the verdict form submitted to the jury eliminated the "carried" language. Accordingly, the narrow issue before us is whether the evidence supports the jury's finding that X "used" a firearm during and in relation to a drug trafficking crime.[7]

The Supreme Court addressed the meaning of the term "use" within § 924(c) in a line of cases beginning in 1993. First, in *Smith v. United States*, 508 U.S. 223, 232, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993), the Court held that a defendant who trades a gun for drugs "uses" the gun within the meaning of § 924(c). In adopting a

---

[6]The Indictment actually charged that X "used and carried" a firearm, however, it is generally accepted that in an indictment, "and" means "or."

[7]X does not raise any issue relating to the "during and in relation to" requirement of the "use" offense.

broad definition of the term "use," the Court rejected a more narrow definition that would have required a defendant to "use" the firearm "as a weapon." *See id.* at 229-30 (noting that even "scratching one's head with a gun might constitute 'use'"). Next, in *Bailey v. United States*, 516 U.S. 137, 143, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Court further defined the term "use" by holding that to "use" a gun the defendant must "actively employ" the gun as "an operative factor in relation to the predicate offense." The Court explained that "[i]f the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not 'used.'" *Id.* at 149. For example, an undisclosed firearm locked in the trunk of a car would not be "used." *See id.* at 150-51. Lastly, in *Watson v. United States*, 552 U.S. 74, 83, 128 S.Ct. 579, 169 L.Ed.2d 472 (2007), the Court held that a defendant who exchanges drugs for a gun, thereby *receiving* a gun in the transaction does not "use" the gun within the meaning of § 924(c).[8]

X concedes that he sold a firearm and heroin to Ridgway in the same container, in a single transaction.[9] However, he argues that selling the gun to Ridgway does not constitute a "use" of the firearm within the meaning of § 924(c)(1)(A). We disagree.

First, the meaning of "use" adopted by the Supreme Court in *Watson*, *Bailey*, and *Smith* clearly encompasses selling a firearm and drugs in the same container, in a single transaction. *See id*. at 79 (stating "[a] boy who trades an apple to get a granola bar is sensibly said to *use* the apple" in the transaction) (emphasis added); *Bailey*, 516 U.S. at 123 (holding "a firearm can be *used* without being carried, *e.g.*, when an offender . . . barters with a firearm without handling it") (emphasis added);

---

[8]Before the Court decided *Watson*, Congress amended § 924(c) to its present form (in response to *Bailey*) by adding the inapposite "possession" offense previously discussed.

[9]X's actual offense is aiding and abetting Tracy's sale of the gun and the heroin to Ridgway, however, for ease of reading and because the analysis is identical, we will analyze the facts as though X sold the gun and the heroin to Ridgway.

*Smith*, 508 U.S. at 234-35 (holding that under § 924(c) "one who transports, exports, sells, or trades a firearm '*uses*' it") (emphasis added). Second, the facts presented here do not fall within the situation contemplated by the Court in *Bailey* where "the gun is not disclosed or mentioned by the offender." *Bailey*, 516 U.S. at 149. To the contrary, X openly discussed the presence of the gun with Ridgway when he negotiated the sale of the gun and heroin together, in a single transaction. *See id.* at 148 (noting that even a "reference to a firearm in [the defendant's] possession could satisfy" the use requirement of § 924(c)). In doing so, X actively employed the gun in relation to the underlying offense. *Cf. id.* ("If the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not 'used.'"). Finally, *Watson* is inapposite because X did not *receive* the gun in the transaction; he brought the gun to the transaction. *See United States v. Doody*, 600 F.3d 752, 754 (7th Cir. 2010) ("*Watson* rested on the plain meaning of the word 'use'–one who receives something in a bartering transaction is not ordinarily said to use the object he received in relation to trade.").

## III. CONCLUSION

We affirm the district court's decisions to deny X's motion to suppress and motion for judgment of acquittal.

_____