# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-3695

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Jeffrey Allen Stoltz, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: May 18, 2012
Filed: July 10, 2012

———————

Before LOKEN and BEAM, Circuit Judges, and PERRY,[1] District Judge.

———————

BEAM, Circuit Judge.

A jury convicted defendant Jeffrey Stoltz of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Stoltz appeals his conviction, asserting that the district court[2] erroneously (1) denied his motion to suppress; and (2) excluded

———————

[1]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

prior convictions of a government witness under Federal Rule of Evidence 609; and that there was (3) insufficient evidence to support the jury's verdict.[3] We affirm.

## I.    BACKGROUND

On the morning of November 16, 2010, Special Agents Scot Umlauf and Steve Parshall conducted an investigation into a drug overdose death in Alexandria, Minnesota. During the investigation, they learned that a suspected drug dealer fled the scene of the crime and was possibly staying twenty miles away at a known drug house in Lowry, Minnesota. Parshall relayed this information to Deputy Jason Sorenson, who then drove past the Lowry residence and observed a green sport utility vehicle (SUV), registered to Ingrid Stanley, in the driveway. Later that day, Sorenson stopped the SUV after he observed the vehicle driving without a front license plate, which is a violation of state law. See Minn. Stat. § 169.79, subd. 6 ("[O]ne [license] plate must be displayed on the front and one on the rear of the vehicle.").

After pulling over the SUV, Sorenson approached the driver's side window and noticed two large dogs and a male driver inside the vehicle. Sorenson asked the driver to produce a driver's license and proof of insurance but the driver, who was visibly nervous, told Sorenson that he did not have either with him. In lieu of providing a driver's license, the driver told Sorenson that his name was David Michael Stoltz and that his date of birth was October 12, 1965. Sorenson returned to

---

[3]The United States has moved to supplement the record on appeal to include various trial exhibits and the certified copies of the convictions the district court excluded under Federal Rule of Evidence 609. We may supplement the record to include "anything material to either party [that] is omitted from or misstated in the record by error or accident." Fed. R. App. P. 10(e)(2)(C). We find that the documents at issue are material to the issues raised on appeal. Therefore, we grant the motion to supplement the record. See United States v. Ruff, 472 F.3d 1044, 1047 n.4 (8th Cir. 2007).

his patrol car and verified, through dispatch, that David Stoltz was a valid Minnesota driver. Sorenson then began to fill out a citation for no proof of insurance. See Minn. Stat. § 169.791, subd. 2 ("If the driver does not produce the required proof of insurance upon the demand of a peace officer, the driver is guilty of a misdemeanor.").

While Sorenson was filling out the citation, Agents Umlauf and Parshall arrived on the scene and Sorenson explained that the driver of the SUV was David Stoltz. Umlauf became suspicious that the driver was actually Jeffrey Stoltz and that the driver had falsely identified himself. Umlauf was aware that Jeffrey Stoltz lived with Ingrid Stanley, the registered owner of the SUV, but Umlauf was unable to visually confirm the driver's identity from his vantage point. To confirm the identity of the driver, the officers retrieved a photograph of David Stoltz on a database via Parshall's mobile computer. After viewing the photo, Sorenson determined that the driver did not resemble David Stoltz. The officers agreed that, before they proceeded with an arrest, Sorenson should get the driver out of the SUV so the officers could compare the driver with photographs of David and Jeffrey Stoltz. Umlauf advised Sorenson to proceed with caution because Jeffrey Stoltz had been found in possession of firearms in previous encounters with law enforcement.

Sorenson returned to the SUV and told the driver to exit the vehicle so the officers could verify his identity. To ensure officer safety, Sorenson conducted a pat-down search of the driver after he exited the vehicle and, while doing so, retrieved a digital scale from the driver's pocket. The officers then compared the driver to photographs of David and Jeffrey Stoltz and concluded that the driver was, in fact, Jeffrey Stoltz. The officers then placed Jeffrey Stoltz under arrest for falsely identifying himself. See Minn. Stat. § 609.506, subd. 2 ("Whoever with intent to obstruct justice gives the name and date of birth of another person to a peace officer . . . when the officer makes inquiries incident to a lawful investigatory stop . . . is guilty of a gross misdemeanor."). Sorenson then searched Stoltz's person and located

$741 in cash. Parshall and Umlauf also performed a field test on Stoltz's digital scale, which tested positive for methamphetamine. Sorenson transported Stoltz to the stationhouse and the SUV was impounded.

The day after Stoltz's arrest, Umlauf applied for and received a search warrant for the SUV. While executing the warrant, Parshall and Umlauf located a wallet between the driver's seat and center console of the SUV that contained Stoltz's driver's license and two pawn receipts. The receipts indicated that Stoltz–a convicted felon–pawned a shotgun, two shotgun barrels, and a rifle with Viking Pawn on June 29, 2010. Parshall then went to Viking Pawn to investigate the transaction. There, two employees viewed a photo of Stoltz and verified that Stoltz pawned the firearms listed on the pawn receipts.

The grand jury returned an indictment charging Stoltz with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Stoltz filed a motion to suppress evidence obtained during the roadside searches of his person and the subsequent warrant-based search of the SUV. The magistrate judge[4] issued a report recommending denial of the motion, which the district court adopted. At trial, among other evidence, the government introduced the testimony of pawnshop employees Judith Collins and Daniel Tillberg. Under Federal Rule of Evidence 609, the district court barred Stoltz's attempt to introduce evidence of Tillberg's two prior convictions. The jury returned a verdict of guilty, and Stoltz appeals.

---

[4]The Honorable Leo I. Brisbois, United States Magistrate Judge for the District of Minnesota.

## II.    DISCUSSION

### A.    Motion to Suppress

Stoltz contends that the district court erred when it denied his motion to suppress. When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its conclusions of law de novo. United States v. Williams, 669 F.3d 903, 905 (8th Cir. 2012).

First, Stoltz argues that, under the Fourth Amendment, the district court should have suppressed all evidence obtained after Deputy Sorenson told Stoltz to exit the SUV because, at that point, Stoltz was unlawfully arrested without probable cause. We disagree. It is well settled that, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures." Maryland v. Wilson, 519 U.S. 408, 412 (1997) (quotation omitted). Stoltz does not contend that he was unlawfully stopped for driving an SUV without a front license plate, which is a violation of Minnesota law, or that the detention was unreasonably prolonged. See United States v. Long, 320 F.3d 795, 799 (8th Cir. 2003) ("Any traffic stop is constitutional . . . so long as the officer had probable cause to believe that a traffic violation actually occurred."); United States v. Bowman, 660 F.3d 338, 343 (8th Cir. 2011) ("If complications arise during . . . routine [traffic stop] tasks, the vehicle may be detained for a longer period of time."); Bowman, 660 F.3d at 344 ("An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered." (quotation omitted)). Stoltz's argument on this point is meritless.

Second, Stoltz argues that the pawn receipts officers seized from his wallet, while executing a search warrant on the SUV, should be suppressed because the search of the wallet fell outside the scope of the search warrant. We disagree. We

-5-

review de novo whether officers exceeded the scope of a warrant during a search. United States v. Weinbender, 109 F.3d 1327, 1329 (8th Cir. 1997). The search warrant at issue expressly authorized officers to search the SUV for "receipts" and "other items evidencing the . . . expenditure of money." And, "[a] lawful search extends to all areas and containers in which the object of the search may be found." Id. Because receipts may be found in a wallet, the officers' search of the wallet did not exceed the scope of the search warrant.

## B.    Rule 609 Convictions

Next, Stoltz argues that, under Federal Rule of Evidence 609, the district court erroneously excluded two prior convictions of government witness Daniel Tillberg. We review the district court's exclusion of the convictions under Rule 609 for an abuse of discretion. United States v. Swanson, 9 F.3d 1354, 1356 (8th Cir. 1993). Under Rule 609(a), convictions may be used to attack a witness's character for truthfulness if: (1) subject to Rule 403, the conviction is punishable by more than one year in prison; or (2) the crime's elements required proving "a dishonest act or false statement." Fed. R. Evid. 609(a). Rule 609(b) places additional limitations on the admissibility of old convictions. Specifically, "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later[,]" then the conviction is admissible only if (1) its probative value substantially outweighs its prejudicial effect; and (2) the proponent gives the adverse party written notice of the intent to use the conviction. Fed. R. Evid. 609(b).

Stoltz attempted to admit two of Tillberg's prior convictions into evidence under Rule 609: (1) a misdemeanor disorderly conduct conviction;[5] and (2) a 2001

---

[5] Although Stoltz asserts that Tillberg pled guilty to misdemeanor "obstruction of legal process" on June 9, 2008, the record reveals that Tillberg pled guilty to misdemeanor "disorderly conduct" and the obstruction of legal process charge was dismissed.

felony aiding and abetting unauthorized use of a vehicle conviction. The district court excluded the misdemeanor conviction under Rule 609(a)(2) and excluded the 2001 felony conviction under Rule 609(b). We hold that, in doing so, the district court did not abuse its discretion.

First, Stoltz's misdemeanor disorderly conduct conviction is not the sort of crime of falsehood contemplated in Rule 609(a)(2). See United States v. Collier, 527 F.3d 695, 699 (8th Cir. 2008) (explaining that Rule 609(a)(2) refers to "crimes such as perjury . . . false statement, criminal fraud, embezzlement, . . . or any other offense in the nature of *crimen falsi*" (quotation omitted)). Indeed, under Minnesota law, the elements of Tillberg's disorderly conduct offense do not require the government to prove a "dishonest act or false statement." See Minn. Stat. § 609.72, subd. 1(3). Therefore, the district court did not err when it excluded the disorderly conduct conviction under Rule 609(a)(2).

Stoltz's arguments regarding the admissibility of the felony conviction are equally unconvincing. Tillberg was convicted of felony aiding and abetting unauthorized use of a vehicle in January 2001, and began serving probation for that offense in April 2001. Tillberg was discharged from probation on July 14, 2004, and Stoltz's trial in this case began on July 27, 2011. Stoltz contends that the phrase "release from confinement" in Rule 609(b) encompasses release from probation and, because Tillberg was discharged from probation within ten years of trial, the felony conviction is not stale. We disagree. As our sister circuits have held, "'confinement' for purposes of the ten-year time limit in Rule 609(b) does not include periods of probation." United States v. Rogers, 542 F.3d 197, 201 (7th Cir. 2008). Rather, Rule 609(b)'s "[ten-year] clock starts at the witness's release from any *physical* confinement, or in the absence of confinement, the date of the conviction." Id.

(emphasis added). Therefore, because Tillberg was convicted more than ten years before trial, the additional limitations of Rule 609(b) apply.[6]

In the alternative, Stoltz argues that, even if the conviction was stale, it should have been admitted under Rule 609(b)(1) because its probative value substantially outweighed its prejudicial effect. We disagree. Rule 609(b) effectively establishes "a rebuttable presumption against the admissibility of prior convictions more than ten years old." United States v. Felix, 867 F.2d 1068, 1073 (8th Cir. 1989) (quotation omitted). Indeed, such stale convictions "should be admitted very rarely and only in exceptional circumstances." Id. (internal quotation omitted). The district court, after considering the parties' arguments, concluded that such exceptional circumstances did not exist in this case. After careful review, we hold that the district court acted well within its discretion when it excluded Tillberg's felony conviction under Rule 609(b).

## C. Sufficiency of the Evidence

Finally, Stoltz argues that there was insufficient evidence to support his conviction for being a felon in possession of a firearm. Specifically, he argues that, although there is evidence that Stoltz "pawned" a shotgun and rifle, there is no evidence that he ever actually carried or touched the firearms. We review sufficiency challenges de novo and we will "reverse[] only if no reasonable jury could have found the defendant guilty." United States v. Brown, 634 F.3d 435, 439 (8th Cir. 2011) (alteration in original) (quotation omitted).

---

[6]Although somewhat unclear, the certified copy of Tillberg's conviction indicates that, commencing on April 30, 2001, Tillberg may have served eighteen days in jail on the aiding and abetting conviction. If that is the case, Tillberg was "released from confinement" for the purposes of Rule 609(b) in May 2001, which is still more than ten years before Stoltz's trial.

"Possess[ion]" of a firearm, as contemplated in 18 U.S.C. § 922(g)(1), can be actual or constructive. Brown, 634 F.3d at 439. Actual possession refers to the "knowing, direct, and physical control over a [firearm]," whereas constructive possession "is established by proof that the defendant had control over the place where the firearm was located, or control, ownership, or dominion of the firearm itself." Id. (quotations omitted). Notably, a showing of possession "may be based on circumstantial evidence which is intrinsically as probative as direct evidence." Id. (quotation omitted).

We find that there was sufficient evidence for a reasonable jury to conclude that Stoltz actually possessed the firearms at issue.[7] At trial, the government introduced evidence that pawn receipts were located in Stoltz's wallet along with Stoltz's driver's license. The pawn receipts bore Stoltz's name and driver's license number, and indicated that Stoltz pawned a shotgun, two shotgun barrels, and a rifle at Viking Pawn on June 29, 2010. The government also introduced the testimony of Judith Collins, the owner of Viking Pawn. Collins testified that Viking Pawn's standard procedure is to write the name and driver's license number of the individual pawning items on a pawn receipt. When Stoltz's attorney asked Collins whether she knew if the firearms belonged to Stoltz or to Stoltz's son, Collins replied, "I don't know who they belonged to. I know Mr. Jeff Stoltz brought them in. That's all I know." Later, Collins, who was familiar with Stoltz from previous transactions, explained that she had "[n]o doubt" that Stoltz was the individual who pawned the firearms. In addition, Viking Pawn employee Daniel Tillberg testified that Stoltz paid interest on the pawn loans and, on one occasion, attempted to retrieve the firearms. Tillberg explained that Stoltz became angry when Tillberg refused to return the

---

[7]Although the government makes compelling arguments with regard to constructive possession, our finding as to actual possession forecloses the need to decide whether there was sufficient evidence of constructive possession.

firearms after Stoltz refused to submit to a mandatory background check.[8]  Although Tillberg was prohibited from returning the firearms, he did return a shotgun barrel to Stoltz. Viewing such evidence in the light most favorable to the government, we hold that the evidence "substantially supports" the jury's verdict.  Id. at 439; see, e.g., United States v. Hernandez, 972 F.2d 885, 887 (8th Cir. 1992) (finding "more than sufficient" evidence that the defendant knowingly possessed a firearm where there was ample evidence, including receipts, that the defendant "pawned" the firearm in question).

## III.  CONCLUSION

We affirm.[9]

------------------------------

------------------------------

[8]The government also presented evidence that Stoltz granted an individual named Jason Roers authority to retrieve the firearms from Viking Pawn.  Roers attempted to pick up the firearms on one occasion but was unsuccessful because he failed the mandatory background check.

[9]Stoltz filed a pro se motion to supplement the appellate brief filed by his counsel.  "We generally do not accept pro se motions or briefs when an appellant is represented by counsel . . . ." United States v. McIntosh, 492 F.3d 956, 961 n.2 (8th Cir. 2007).  Following our typical practice, we deny Stoltz's motion.