# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2919

_____

United States of America

*Plaintiff - Appellee*

v.

Damon E. Goodrich

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 27, 2013
Filed: January 9, 2014
(Published)

_____

Before WOLLMAN, SMITH, and KELLY, Circuit Judges.

_____

PER CURIAM.

A jury convicted Damon Goodrich on all counts of a three-count indictment for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("Count 1"); possession with intent to distribute less than fifty kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) ("Count 2"); and possession of a firearm in furtherance of a drug trafficking crime, in violation

of 18 U.S.C. § 924(c)(1)(A) (Count 3"). The district court[1] sentenced Goodrich to 33 months' imprisonment on Counts 1 and 2, and 90 months, to run consecutive to Counts 1 and 2, on Count 3. Goodrich seeks reversal of the guilty verdict or, in the alternative, remand for resentencing. First, he alleges that the evidence presented against him was the fruit of two unlawful searches of his home. Second, he claims that the evidence presented was insufficient to support a conviction. Third, he contends that the district court's sentence, particularly its upward variance on Count 3, was substantively unreasonable. For the reasons stated below, we affirm.

## I. *Background*

On the evening of May 21, 2009, three Kansas City, Missouri police officers responded to a report of a break-in at a house that Goodrich rented. When they arrived, a witness told police he heard a gunshot. The officers could see people moving inside the house. One intruder left the house and ran toward a nearby wooded area. While fleeing, this suspect dropped a bag of marijuana and two handguns and was eventually arrested. Police arrested a second intruder attempting to exit the house through a window.

Goodrich arrived at the house shortly after the police. Advised of a gunshot, the officers organized a protective sweep of the house for additional intruders or possible victims. They asked Goodrich to open the front door. He initially refused, but he relented after officers informed him that if he did not unlock the door, they would force their way in. Once inside, officers conducted a 20 to 25 minutes, room-by-room sweep of the house. They looked under beds and blankets, in closets, and anywhere they believed suspects could be hiding or victims might be found. During the search, they observed a firearm on a bed and an open diaper box containing individually wrapped baggies of marijuana in a bedroom.

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

After the search, Police Detective Darryl Ward arrived on the scene. Based on the responding officer's report, Ward determined that a second search was needed. Ward sought Goodrich's consent but he initially denied living at the house. After a search through the police database matched Goodrich to the address, and police found utility bills in the mailbox in his name, Goodrich admitted to living in the house.

Detective Ward gave Goodrich a consent-to-search form, which advised Goodrich of his right to refuse and the potential use of any evidence found during the search. An officer read the form aloud to Goodrich, who also read it himself and admitted that he understood it. When Goodrich asked what would happen if he did not consent to the search, Detective Ward stated officers would obtain a search warrant. Mr. Goodrich signed the form.

In the second search, police found a loaded pistol and $1,000 in cash in one bedroom. They recovered $13,000 in cash and several clear plastic bags containing a "green, leafy substance" in the next bedroom. They discovered another loaded pistol and several scales in the kitchen. Finally, a search of the living room revealed $10,000 in cash in a briefcase, an industrial size roll of shrink wrap, a box of ammunition matching the caliber of one of the pistols, and a ballistic vest.

Police tested several bags of the leafy substance; tests revealed that the bags contained approximately 5760 grams of marijuana. Police developed a partial genetic profile from the gun. The profile matched Goodrich, though officers did contaminate the sample by getting some of their own DNA on the gun.

On this evidence, a grand jury returned a three-count indictment against Goodrich. Count 1 charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count 2 charged him with possession with intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). Count 3 charged him with possession of a

firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). The parties stipulated that Goodrich had at least one prior felony conviction.

Goodrich pleaded not guilty. He then moved to suppress all of the evidence discovered in the searches of his home, claiming that the searches violated the Fourth Amendment. The magistrate judge rendered, and the district court adopted, a report and recommendation granting in part and denying in part the motion to suppress.

After a three-day trial, the jury found Goodrich guilty on all three counts. The court calculated a Guidelines range of 27 to 33 months each on Counts 1 and 2, and 60 months on Count 3. The court sentenced Goodrich to 33 months on Counts 1 and 2, to be served concurrently, and 90 months on Count 3, to be served consecutively.

## II. *Discussion*

Goodrich appeals, renewing his objection to the search and challenging the sufficiency of the evidence for his conviction. In the alternative, he argues that his sentence is substantively unreasonable.

### A. *Motion to Suppress*

Goodrich alleges that the protective sweep and the consent search each violated his Fourth Amendment rights.

We review the factual findings of the district court "in support of its denial of a motion to suppress for clear error." *United States v. Hogan*, 539 F.3d 916, 921 (8th Cir. 2008) (internal quotations and citations omitted). We review de novo its legal conclusions. *Id*. We "will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *Id*. (quotations and citations omitted)

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…" As the Supreme Court observed, "a search or seizure carried out in a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971).

### 1. *Protective Sweep*

Goodrich acknowledges that he gave police consent to enter his home, but argues that the consent was coerced. He avers that he only agreed to unlock the house door for the protective sweep after officers threatened to "break the door down" if he did not open it. He also claims he was handcuffed at the time. He argues that no consent obtained through "duress and threats of property damage" can be valid consent, and thus the protective sweep was unlawful. The officers testified they would have forced entry if Goodrich had not unlocked the door, but they never handcuffed Goodrich.

The validity of a protective sweep does not hinge on Goodrich's consent. In exigent circumstances, police may enter a dwelling without the owner or occupant's consent. "[L]egitimate concern for the safety of individuals may constitute 'exigent circumstances' justifying warrantless entr[y]" into a home. *United States v. Atwine*, 873 F.2d 1144, 1147 (8th Cir. 1989) (citations omitted). Here, a witness told arriving police that a gun had been fired. Police captured one of the suspects with a firearm. Based on the circumstances, the police could have reasonably believed that a shooting victim or an additional armed suspect might be in the house. This reasonable belief justified warrantless entry of the house, with or without Goodrich's consent.

Goodrich also contends that the search exceeded a reasonable scope, stretching more than half an hour and including a search in boxes and "other places that could not reasonably be expected to hold suspects or victims." Officers testified that the

search lasted 20 to 25 minutes and that their search was confined to searching beds, closets, and other places a person might hide. Police conducted a methodical search of a multi-room, multi-story home to look for potential victims or suspects. The reasonableness of any exigency-based search requires a highly fact-intensive inquiry. Taking into account the facts recited, we hold that the 20 to 25 minutes search did not exceed the scope presented by the exigent circumstances present here. We hold that the police did not violate the Fourth Amendment by entering Goodrich's home without a warrant based on exigent circumstances at that time. The search remained within the circumference of a reasonable search for suspects or victims.

## 2. *Consent Search*

Goodrich next challenges the consent search, alleging that police used threats to coerce his consent. He claims officers handcuffed him after the first search, and threatened to "get angry" and "destroy the house while they were searching it" if they had to get a warrant rather than his consent. The government presented, and the court below accepted, a different version of events. The district court found that Goodrich did not object to the search, nor was he threatened. Goodrich acknowledges that he read and understood the consent form, and did not object while officers searched the house.

A search conducted pursuant to valid consent does not violate the Fourth Amendment. *United States v. Hines*, 387 F.3d 690, 694 (8th Cir. 2004). Having reviewed the record, we conclude that the district court did not clearly err in its findings of fact; therefore, Goodrich consented to the search and no constitutional violation occurred. The district court properly denied Goodrich's motion to suppress.

## B. *Sufficiency of the Evidence*

Goodrich challenges the sufficiency of the evidence on each count of the verdict. "We review de novo the sufficiency of the evidence to sustain a conviction. We will affirm unless, viewing the evidence in the light most favorable to the

[g]overnment and accepting all reasonable inferences that may be drawn in favor of the verdict, no reasonable jury could have found [the defendant] guilty." *United States v. Thompson*, 686 F.3d 575, 582 (8th Cir. 2012).

### 1. *Counts 1 & 2: Possession Offenses*

To convict Goodrich on Count 1, of being a felon in possession of a firearm, the government must prove, that he "knowingly possessed" the firearm. *United States v. Brown*, 634 F.3d 435, 439 (8th Cir. 2011) (describing the elements of being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1)). Similarly, to convict Goodrich on Count 2, the government must prove that he "knowingly possessed" the drugs. *United States v. Parker*, 587 F.3d 871, 881 (8th Cir. 2009) (describing the elements of possession of a drug with intent to distribute under 21 U.S.C. §§ 841(a)(1)).

"Possession may be actual or constructive." *Id*. (quotations and citations omitted). "Constructive possession is established by proof that the defendant had control over the place where the firearm was located, or control, ownership, or dominion of the firearm itself." *Brown*, 634 F.3d at 439 (quotations and citations omitted). *See also Parker*, 587 F.3d at 881 ("A defendant's control and dominion over a vehicle [where drugs were found] can indicate knowledge.") (citations omitted).

Goodrich alleges that the government did not present sufficient evidence that he possessed either the guns or drugs. He argues that no evidence ties him to the firearms or drugs. He proposes that the burglars, who "ransacked the house leaving it in total disarray," may have brought the guns and marijuana with them. He points out that the government presented no fingerprint evidence tying him to either item of contraband. He also challenges the reliability of the DNA evidence and its associated lab process.

Upon review, we hold that the government presented sufficient proof that Goodrich controlled and dwelled in the house. Goodrich admitted that he rented and lived in the house, utility bills found in the mailbox were in his name, and he possessed keys to the house. Such evidence suffices to show that he had dominion and control over the premises. *See United States v. McCracken*, 110 F.3d 535, 541 (8th Cir. 1997) (finding constructive possession where the defendant lived in the apartment where drugs were found, and law enforcement found drugs and some of the defendant's possessions in the same room).

Goodrich's suggestion that the burglars brought the guns and drugs into the house is certainly possible. In *Brown*, we considered a similar argument. In that case, the defendant was charged with being a felon in possession of a firearm. 654 F.3d at 436. He was a passenger in the car where the gun was found. *Id*. at 436–37. He argued "an unknown person may have left the gun in [the] automobile." *Id*. at 439. Affirming his conviction, we held that "the presence of one possible 'innocent' explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a reasonable doubt." *Id*. (quotations and citations omitted).

Nor does the lack of fingerprint evidence cast reasonable doubt on the verdict. "While such fingerprint evidence might have strengthened the [government's] case, . . . it is not required to convict." *Brown*, 643 F.3d at 439. (alteration in original) (quoting *United States v. McCraney*, 612 F.3d 1057, 1064 (8th Cir. 2010))

Finally, Goodrich challenges the reliability—not the admissibility—of the DNA evidence. The contamination of the DNA evidence in the collection process and the weight to give it are questions for the jury to decide. *See United States v. Vallie*, 284 F.3d 917, 920 (8th Cir. 2002) ("Moreover, any defect in the collection of the DNA evidence would have gone more to its weight than its admissibility."); *United States v. Beasley*, 102 F.3d 1440, 1448 (8th Cir. 1996) (holding that alleged

deficiencies in the protocols and procedures used by a lab go to the weight rather than admissibility of DNA evidence). Goodrich had ample opportunity to cross-examine witnesses and proffer his own expert testimony. On the record before us, we conclude that a reasonable jury could have returned a guilty verdict on Counts 1 and 2.

## 2. *Count III: Possession of a Firearm in Furtherance of a Drug Trafficking Crime*

"A conviction for possessing a firearm in furtherance of a drug trafficking crime requires that the government prove a nexus between the defendant's possession of the firearm and the drug crime." *United States v. Close*, 518 F.3d 617, 619 (8th Cir. 2008) (interpreting 18 U.S.C. § 924(c)(1)(A)). This requires more than mere proof that drugs and a firearm were possessed simultaneously. *Id*. The jury may infer that the firearm was so used "when it is kept in close proximity to the drugs, it is quickly accessible, and there is expert testimony regarding the use of firearms in connection with drug trafficking." *Id.*

Goodrich argues that burglars moved around items inside the house, including guns and marijuana, meaning that the government cannot prove that the drugs and guns were kept in close proximity. He further contends that the government offered no evidence that guns were sold from or regularly possessed in the house.

We considered similar facts in *United States v. Sanchez-Garcia*, 461 F.3d 939 (8th Cir. 2006). In that case, police found firearms in an apartment bedroom, and drugs and scales in the adjacent kitchen. We held that such proximity sufficiently satisfied the elements of the crime. *Id*. at 947. Here, drugs, firearms, scales, and cash were kept throughout the house, in at least two bedrooms, the living room, and the kitchen. A jury could reasonably infer that the firearms were kept in close proximity to the drugs, despite burglars moving items in the house.

The government presented competent testimony that drug dealers often keep firearms readily accessible to protect their drugs and money. The government presented testimony that drugs found in this quantity, with scales and large quantities of cash, are consistent with the owner distributing drugs. The government satisfied its evidentiary burden. A reasonable jury could infer from the evidence presented that Goodrich was engaged in selling drugs, and that he possessed a firearm in furtherance of that crime.

## C. *Sentencing*

"[W]e review the imposition of sentences, whether inside or outside the Guidelines range, [under] a deferential abuse-of-discretion standard." *United States v. Hayes*, 518 F.3d 989, 995 (8th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 40 (2007)).

Goodrich challenges the reasonableness of his sentence on two fronts. First, he points out that the government offered a plea agreement before trial, with a recommended sentence of 24 to 33 months in custody. At the post-trial sentencing hearing, the government recommended sentences at the top of the Guidelines range for Counts 1 and 2 (33 months), and the statutory minimum of 60 months for Count 3. The court imposed concurrent 33-months' sentences for Counts 1 and 2, and varied upward to 90 months for Count 3. Goodrich contends that if the initial plea offer or the government's post-trial recommendation represented a sentence sufficient but not greater than necessary to achieve the purposes of criminal sentencing, a longer sentence must be excessive. Second, he contends that the district court did not consider any of the significant mitigating evidence he offered, but instead focused on his criminal history.

With respect to Counts 1 and 2, this court may presume that a sentence within the Guidelines range is reasonable. *United States v. Feemster*, 572 F.3d 455, 461–62 (8th Cir. 2009) (en banc). Given the facts adduced at trial and considered by the

district court at sentencing, we discern no basis for concluding this within-Guidelines-range sentence is substantively unreasonable.

Nor is Goodrich's argument from the plea offer convincing. It is unsurprising that the government would offer a lighter sentence in a plea agreement than a defendant might expect to receive when imposed by the court after a trial. Also, the government would likely recommend a higher sentence after a criminal defendant puts it through the time and expense of a contested trial. The reasonableness of a sentence imposed by a district court after trial is not judged by what the government or the defendant considered in their bargaining before the matter became solely a judicial task upon conviction.

With respect to Count 3, the court varied upward significantly. As Goodrich asserts, the court focused on Goodrich's criminal history, noting that despite an extensive criminal record, he rarely faced incarceration. The court's focus, however, was neither unwarranted nor unexplained. Goodrich's most recent felony conviction was for possession of a controlled substance and unlawful use of a weapon—conduct substantially similar to this case. The court emphasized that the firearm possession prompted the variance. The court noted that Goodrich knew he should not have possessed a firearm, and the court expressed concern that his conduct mirrored much of his past criminal behavior. The court also considered Goodrich's responsibility for the presence of unsecured guns in a house with small children. The court's variance is supported by substantial evidence in the record, and there is no evidence that the court either ignored mitigating evidence or failed to adequately consider the statutory factors. We cannot find that the district court abused its discretion in imposing a 90-month sentence for Count 3.

### III. *Conclusion*

Accordingly, the judgment of the district court is affirmed.

_____